Argued and submitted April 12, 2013, on appeal, reversed and remanded as to defamation claim, attorney fee award vacated and remanded; otherwise affirmed; cross-appeal dismissed as moot March 12, 2014

Carol C. NEUMANN
and Dancing Deer Mountain, LLC,
an Oregon domestic limited liability company,
*Plaintiffs-Appellants*
*Cross-Respondents,*

*v.*

Christopher LILES,
*Defendant-Respondent*
*Cross-Appellant.*

Lane County Circuit Court
121103711; A149982

323 P3d 521

Steve C. Baldwin argued the cause for appellants-cross-respondents. With him on the briefs was Watkinson Laird Rubenstein Baldwin & Burgess, P.C.

Linda K. Williams argued the cause and filed the briefs for respondent-cross-appellant.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Lagesen, Judge.*

LAGESEN, J.

---

* Lagesen, J., *vice* Egan, J.

## LAGESEN, J.

After attending a wedding at plaintiff Dancing Deer Mountain, LLC, a wedding venue co-owned and operated by plaintiff Carol Neumann and her husband, Timothy Benton, defendant Christopher Liles posted a negative review on google.com. In the review, defendant characterized the venue as a "disaster" and Neumann as "two faced, crooked, and * * * rude to multiple guest[s]." He stated further that Neumann and her husband "changed the rules as they saw fit" by informing guests that they needed to leave the premises earlier than they had originally been told, and that Neumann would find a way to retain any security deposit and charge even more money for use of the facility. Neumann and Dancing Deer Mountain sued defendant, with Neumann asserting claims for defamation and invasion of privacy by false light, and Dancing Deer Mountain asserting claims for intentional interference with economic relations and invasion of privacy by false light. On defendant's motion, the trial court dismissed the case under ORS 31.150,[1] Oregon's anti-Strategic Lawsuits against Public

---

[1] ORS 31.150 provides:

"(1) A defendant may make a special motion to strike against a claim in a civil action described in subsection (2) of this section. The court shall grant the motion unless the plaintiff establishes in the manner provided by subsection (3) of this section that there is a probability that the plaintiff will prevail on the claim. The special motion to strike shall be treated as a motion to dismiss under ORCP 21 A but shall not be subject to ORCP 21 F. Upon granting the special motion to strike, the court shall enter a judgment of dismissal without prejudice. If the court denies a special motion to strike, the court shall enter a limited judgment denying the motion.

"(2) A special motion to strike may be made under this section against any claim in a civil action that arises out of:

"(a) Any oral statement made, or written statement or other document submitted, in a legislative, executive or judicial proceeding or other proceeding authorized by law;

"(b) Any oral statement made, or written statement or other document submitted, in connection with an issue under consideration or review by a legislative, executive or judicial body or other proceeding authorized by law;

"(c) Any oral statement made, or written statement or other document presented, in a place open to the public or a public forum in connection with an issue of public interest; or

"(d) Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Participation (anti-SLAPP) statute, concluding both that plaintiffs' claims fell within the scope of ORS 31.150(2), making them subject to the anti-SLAPP procedures, and that plaintiffs failed to establish a *prima facie* case in support of any of their claims, as required by ORS 31.150(3). We reverse, concluding that the trial court erred when it determined that Neumann had not established a *prima facie* case in support of her defamation claim.

## I. BACKGROUND[2]

Defendant attended a wedding at Dancing Deer Mountain. During the event, tensions arose between Dancing Deer Mountain staff, including Neumann, and the wedding party and guests, after staff observed attendees consuming alcohol in a manner that violated Dancing Deer Mountain's alcohol policy. Those tensions were exacerbated when, at approximately 8:30 p.m. on the night of the wedding, Neumann and her staff began asking guests to leave, in accordance with Dancing Deer Mountain's requirement, contained in its rental agreement, that the wedding party and guests vacate the premises by 8:30 p.m.

"(3) A defendant making a special motion to strike under the provisions of this section has the initial burden of making a prima facie showing that the claim against which the motion is made arises out of a statement, document or conduct described in subsection (2) of this section. If the defendant meets this burden, the burden shifts to the plaintiff in the action to establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case. If the plaintiff meets this burden, the court shall deny the motion.

"(4) In making a determination under subsection (1) of this section, the court shall consider pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

"(5) If the court determines that the plaintiff has established a probability that the plaintiff will prevail on the claim:

"(a) The fact that the determination has been made and the substance of the determination may not be admitted in evidence at any later stage of the case; and

"(b) The determination does not affect the burden of proof or standard of proof that is applied in the proceeding."

[2] In accordance with the legal standards governing special motions to strike under ORS 31.150, discussed further below, we state the facts underlying plaintiffs' claims in the light most favorable to plaintiffs. As we have recently explained, a court may not weigh the evidence in evaluating a special motion to strike under ORS 31.150. *Young v. Davis*, 259 Or App 497, 506-10, 314 P3d 350 (2013). Therefore, to the extent that the record reflects factual disputes, we resolve them in favor of plaintiffs at this stage of the proceedings.

Two days after the wedding, defendant posted a review of Dancing Deer Mountain on google.com. The review, which was entitled "Disaster!!!!! Find a different wedding venue," stated:

"There are many other great places to get married, this is not that place! The worst wedding experience of my life! The location is beautiful the problem is the owners. Carol (female owner) is two faced, crooked, and was rude to multiple guests. I was only happy with one thing: it was a beautiful wedding, when it wasn't raining and Carol and Tim stayed away. The owners did not make the rules clear to the people helping with set up even when they saw something they didn't like they waited until the day of the wedding to bring it up. They also changed the rules as they saw fit. We were told we had to leave at 9pm, but at 8:15 they started telling the guests that they had to leave immediately. The 'bridal suite' was a tool shed that was painted pretty, but a shed all the same. In my opinion She will find a why [*sic*] to keep your $500 deposit, and will try to make you pay even more."

Plaintiffs sued defendant, alleging that by publishing the review, defendant committed the torts of defamation and invasion of privacy by false light against Neumann, and the torts of intentional interference with economic relations and invasion of privacy by false light against Dancing Deer Mountain. Defendant filed a special motion to strike all claims under ORS 31.150. Defendant's theory was that his online review qualified as either a "written statement * * * presented * * * in a place open to the public or a public forum in connection with an issue of public interest," ORS 31.150(2)(c), or, alternatively, "other conduct in furtherance of the exercise of * * * the constitutional right of free speech in connection with a public issue or an issue of public interest," ORS 31.150(2)(d), thereby making the anti-SLAPP procedures applicable to plaintiffs' claims, which arose out of defendant's online review. In response, plaintiffs submitted evidence to support a *prima facie* case on their claims, in accordance with ORS 31.150(3). Plaintiffs also argued that the anti-SLAPP procedures should not apply to their claims because their claims did not target speech in connection with government: "Anti-SLAPP statutes were created

to allow for unfettered speech in matters of governmental gatherings. They were not intended to apply to cases such as this."

Following a hearing, the trial court granted the special motion to strike in full. The court entered a general judgment dismissing the complaint without prejudice, and awarding $8,000 in attorney fees, $337 in costs, and a $500 prevailing party fee to defendant. Plaintiffs timely appealed, and defendant timely cross-appealed. On appeal, plaintiffs assert that the trial court erred in two respects: by concluding that their action was subject to the anti-SLAPP procedures, and by concluding that Neumann had not established a *prima facie* case of defamation. On cross-appeal, defendant contends that the trial court erred by awarding him less than the full amount of attorney fees that he requested.

## II. STANDARD OF REVIEW

A "two-step burden-shifting process" governs the resolution of a special motion to strike under Oregon's anti-SLAPP statute, ORS 31.150. *Young v. Davis*, 259 Or App 497, 501, 314 P3d 350 (2013). In accordance with ORS 31.150(3), a court must first determine "whether the defendant has met its initial burden to show that the claim against which the motion is made 'arises out of' one or more protected activities described in [ORS 31.150(2)]." *Id.* Second, if the defendant meets that burden, the court must determine whether the plaintiff has "establish[ed] that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case." *Id.* (internal quotation marks omitted). Each step of that process presents a question of law. *See Young*, 259 Or App at 507-10 (whether the plaintiff has established a probability of prevailing presents a legal question); *Blackburn v. Brady*, 116 Cal App 4th 670, 676 (2004) (whether anti-SLAPP statute "applies to a particular complaint[] presents a legal question").[3] Accordingly, we review for legal error a trial court's

---

[3] We look to California case law because Oregon's anti-SLAPP statute was "modeled on California statutes" and "[i]t was intended that California case law would inform Oregon courts regarding the application of ORS 31.150 to ORS 31.155." *Page v. Parsons*, 249 Or App 445, 461, 277 P3d 609 (2012); *see Young*, 259 Or App at 507 (quoting *Page*).

ruling on an ORS 31.150 special motion to strike. *See Young*, 259 Or App at 510 (reviewing for legal error trial court's determination that the plaintiff's evidence did not establish a *prima facie* case); *see also Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.*, 122 Cal App 4th 1049, 1056 (2004) ("We independently determine whether a cause of action is based upon activity protected under the statute, and if so, whether the plaintiff has established a reasonable probability of prevailing."); *Blackburn*, 116 Cal App 4th at 676 (same).

## III. ANALYSIS

As noted, plaintiffs contend that the trial court erred at both steps of the process governing the resolution of a special motion to strike. They argue that "[p]laintiffs' complaint is not a SLAPP suit," and that the trial court therefore erred by concluding that their complaint was subject to dismissal under ORS 31.150. Plaintiffs argue further that, even if their complaint falls within the scope of Oregon's anti-SLAPP statute, the trial court erred when it concluded that Neumann had not presented substantial evidence establishing a *prima facie* case of defamation. For the reasons explained below, we do not resolve the first alleged error identified by plaintiffs, but agree that the trial court erred when it concluded that Neumann had not established a *prima facie* case of defamation sufficient to withstand dismissal under ORS 31.150. Accordingly, we reverse.

With respect to the first alleged error identified by plaintiffs—the trial court's determination that plaintiffs' claims were subject to the anti-SLAPP procedures—plaintiffs do not offer a focused argument on appeal as to why defendant's online review does not fall into one of the four categories of protected activities delineated in ORS 31.150(2). In particular, plaintiffs do not address defendant's theory that his review was a statement "in connection with an issue of public interest" published in "a place open to the public or a public forum" under ORS 31.150(2)(c). In fact, plaintiffs do not address the terms of the statute at all, or argue that the text, context, and legislative history demonstrate that the legislature did not intend for online reviews such as the one at issue here to fall within the scope of

ORS 31.150(2)(c) or, alternatively, ORS 31.150(2)(d). Instead, relying primarily on law review articles and Illinois cases interpreting the Illinois anti-SLAPP statute[4]—a statute that is worded differently from, and more narrowly than, ORS 31.150—plaintiffs assert that we "should rule in accordance with [those] authorities * * * and reverse the trial court" and that "[t]he same reasoning should apply to the interpretation of every anti-SLAPP statute."

We recently declined to address a similar argument in *Young* under similar circumstances, where, as here, the plaintiff did not develop a sufficiently focused argument on appeal as to why the allegedly defamatory statements at issue did not fall within the scope of ORS 31.150(2). 259 Or App at 505 (observing that it is not "our proper function to make or develop a party's argument when that party has not endeavored to do so itself" (citations and internal quotations marks omitted)). We take the same approach here, both to be consistent with *Young* and because the trial court's determination that the online business review at issue qualifies as a protected activity under ORS 31.150(2) is not clearly erroneous. Indeed, we note that the trial court's interpretation of ORS 31.150(2) to encompass online business reviews

---

[4] The Illinois anti-SLAPP act, known as the "Citizen Participation Act," 735 ILCS 110/1, focuses narrowly on speech connected with citizen participation in government. Regarding the scope of its application, the act provides:

"This Act applies to any motion to dispose of a claim in a judicial proceeding on the grounds that the claim is based on, relates to, or is in response to any act or acts of the moving party in furtherance of the moving party's rights of petition, speech, association, or to otherwise participate in government.

"Acts in furtherance of the constitutional rights to petition, speech, association, and participation in government are immune from liability, regardless of intent or purpose, except when not genuinely aimed at procuring favorable government action, result, or outcome."

735 ILCS 110/15. By contrast, ORS 31.150 and the California statute on which it is modeled, California Code of Civil Procedure § 425.16, do not limit their focus to speech connected to participation in government. Instead, by their terms, those statutes also apply more broadly to public speech on matters of public importance, regardless of whether that speech occurs in the context of government participation.

Because of those salient differences between the Illinois Citizen Participation Act and the Oregon anti-SLAPP statute, the Illinois case law cited by plaintiffs provides no basis for concluding that the trial court erred in interpreting ORS 31.150(2), absent a developed and focused argument as to why that case law is probative of the Oregon Legislative Assembly's intent, notwithstanding the differences between the Oregon and Illinois statutes.

appears to be consistent with the plain text of the statute,[5] although we do not assess the ultimate correctness of that interpretation at this time.

We nevertheless conclude that the trial court erred by dismissing Neumann's defamation claim. Contrary to the court's conclusion, the evidence supporting the defamation claim was sufficient to meet the "low bar" established by ORS 31.150 "to weed out meritless claims meant to harass or intimidate" a defendant. *Young*, 259 Or App at 508; *see also Staten v. Steel*, 222 Or App 17, 32, 191 P3d 778 (2008), *rev den*, 345 Or 618 (2009) ("The purpose of the special motion to strike procedure, as amplified in the pertinent legislative history, is to expeditiously terminate *unfounded* claims that threaten constitutional free speech rights, not to deprive litigants of the benefit of a jury determination that a claim is *meritorious*." (Emphases in original.)). That is, the evidence submitted by plaintiffs, if credited, would permit a reasonable factfinder to rule in Neumann's favor on the defamation claim, and the evidence submitted by defendant does not defeat Neumann's claim as a matter of law. *Young*, 259 Or App at 508-11.

Under Oregon law, a claim for defamation has three elements: "(1) the making of a defamatory statement; (2) publication of the defamatory material; and (3) a resulting special harm, unless the statement is defamatory *per se* and therefore gives rise to presumptive special harm." *National Union Fire Ins. Co. v. Starplex Corp.*, 220 Or App 560, 584, 188 P3d 332, *rev den*, 345 Or 317 (2008). "In the professional context, a statement is defamatory if it is false and ascribes to another conduct, characteristics or a condition incompatible with the proper conduct of his lawful business, trade, [or] profession."[6] *Brown v. Gatti*, 341 Or 452,

---

[5] For that matter, the trial court's determination also appears to be consistent with the California courts' interpretation of the anti-SLAPP statute on which ORS 31.150(2) is modeled. *See, e.g., Gilbert v. Sykes*, 147 Cal App 4th 13, 22-24 (2007); *Wilbanks v. Wolk*, 121 Cal App 4th 883, 895-97 (2004); *ComputerXpress, Inc. v. Jackson*, 93 Cal App 4th 993, 1006-08 (2001).

[6] Outside the professional context, a statement is defamatory if it subjects the statement's object "to hatred, contempt or ridicule, [or] tend[s] to diminish the esteem, respect, goodwill or confidence in which [the person] is held or [excites] adverse, derogatory or unpleasant feelings or opinions against [him]." *Andreason v. Guard Publishing Co.*, 260 Or 308, 311, 489 P2d 944 (1971).

458, 145 P3d 130 (2006) (internal quotation marks and citations omitted). Statements falsely alleging facts that are "likely to lead people to question [a] plaintiff's fitness to perform his job" are defamatory *per se. L & D of Oregon, Inc. v. American States Ins. Co.*, 171 Or App 17, 25, 14 P3d 617 (2000) (discussing the holding in *Slover v. State Board of Clinical Social Workers*, 144 Or App 565, 568-69, 927 P2d 1098 (1996)); *see also National Union Fire Ins. Co.*, 220 Or App at 584-85 (statements that would tend to harm a plaintiff in his or her business or profession are actionable *per se* without proof of special harm).

Here, the evidence submitted by plaintiffs, if true, would permit a reasonable factfinder to find in Neumann's favor on a claim of defamation concerning her profession. Specifically, if true, plaintiffs' evidence could permit a reasonable factfinder to find that defendant published false statements attributing to Neumann conduct and characteristics "incompatible with the proper conduct of [her] lawful business" of operating a wedding venue, as well as a false statement alleging that Neumann is dishonest.

In particular, that evidence demonstrates that defendant published in an online forum[7] statements alleging that Neumann was "rude to multiple guest[s]," that she "changed the rules" by directing guests to leave at 8:15 p.m. after originally telling guests that they could stay until 9:00 p.m., that Neumann "will find a [way] to keep your $500 deposit, and will try to make you pay even more," and that Neumann is "crooked." Neumann's evidence also provides a basis from which a factfinder could find that defendant's statements were false. Neumann and two others who were present at the wedding that defendant attended submitted affidavits in which they declared that defendant's statements were not true. And a factfinder could find that defendant's online statements impute to Neumann conduct that is incompatible with the proper conduct of the operation of a wedding venue. Couples often intend weddings to be significant, once-in-a-lifetime events that (they hope) will be unblemished by breaches in etiquette and unexpected hitches. As Dancing Deer Mountain's co-owner Benton

---

[7] Defendant does not dispute that the statements were published.

observed in his affidavit, "no one in their own best interest would call a venue who[se] owners" were alleged to have engaged in the conduct that defendant ascribed to Neumann; that conduct is inconsistent with a positive wedding experience.

In addition, a factfinder could find that defendant's statement that Neumann is "crooked," apart from implying that she is not a wedding vendor who can be trusted, alleges that she is dishonest, and would be defamatory for that reason. *See Mannex Corp. v. Bruns*, 250 Or App 50, 52, 57-61, 279 P3d 278 (2012) (recognizing that statements that the plaintiff "was a 'crook[],' that [a third party] should 'never want to do business with [the plaintiff],' and that [the third party] should 'remember that name'" were defamatory, although concluding that the plaintiff's claim for defamation failed because the statements were protected by qualified privilege); *Durr v. Kelleher*, 54 Or App 965, 967-68, 636 P2d 1015 (1981) (affirming trial court verdict awarding damages on defamation claim where "[t]he court found that [the] defendant had maliciously slandered [the] plaintiff by calling him a 'crook' and a 'dishonest' police officer").

Finally, because a factfinder could find that defendant's statements attacked Neumann's professional or business reputation, and, for that reason, would be defamatory *per se*, plaintiffs were not required to present evidence of special harm to establish a *prima facie* case of defamation. *See National Union Fire Ins. Co.*, 220 Or App at 584-85 (statements are *per se* defamatory if they "tend[] to injure the plaintiff in his or her profession or business"; only when a statement is not slander *per se* must a plaintiff allege special harm). Plaintiffs nevertheless did present evidence that would permit a factfinder to find that Neumann was harmed by defendant's statements. Neumann and her co-owner attested to a fairly significant drop in bookings of the venue for weddings almost immediately after the challenged post was made, as well as to expenditures made to mitigate the harm to Neumann's reputation as a wedding-venue operator. A reasonable factfinder could find based on that evidence that Neumann suffered special harm resulting from defendant's statements.

Defendant makes several arguments as to why plaintiffs' evidence is insufficient to establish the *prima facie* case required by ORS 31.150. For the reasons set forth below, we are not persuaded by them.

First, defendant asserts that his statements were nonactionable opinion. "Opinions, as 'statements that cannot reasonably be interpreted as stating actual facts,' are constitutionally protected." *Hickey v. Settlemier*, 141 Or App 103, 110, 917 P2d 44, *rev den*, 323 Or 690 (1996) (quoting *Milkovich v. Lorain Journal Co.*, 497 US 1, 20, 110 S Ct 2695, 111 L Ed 2d 1 (1990)). "Nevertheless, when an 'opinion' implies the existence of undisclosed defamatory facts, it is actionable." *Id.* Here, notwithstanding defendant's use of the phrase "in my opinion" at one point in the review, defendant's statements reasonably could be understood to state facts or imply the existence of undisclosed defamatory facts. By stating that Neumann was rude to multiple guests, defendant, at a minimum, implied that Neumann engaged in conduct that breached the rules of decorum expected at a wedding. By stating that, in his opinion, Neumann will find a way to keep a wedding party's deposit and then charge more, defendant implied that that is, in fact, what happened at the wedding he attended. The statement that Neumann forced guests to leave earlier than agreed upon is an assertion of fact, as is the statement that Neumann is crooked, in the context of the review.

Second, relying on federal cases, defendant asserts that his statements are not defamatory because, in his view, the context of the statements demonstrates that they are figurative, rhetorical, or hyperbolic. *See Obsidian Finance Group, LLC v. Cox*, 812 F Supp 2d 1220, 1222-25 (D Or 2011), *aff'd in part, rev'd in part on other grounds*, 740 F3d 1284 (9th Cir 2014) (describing test used by the Ninth Circuit to determine whether a statement is opinion or fact for defamation purposes under its First Amendment jurisprudence, and noting several examples of nonactionable hyperbole, figurative language, and rhetoric). To the extent that extrajurisdictional authority informs our analysis, we disagree that defendant's statements, as a whole, are hyperbolic. True, some of what defendant says in the challenged post is opinion and is hyperbolic (*e.g.*, "worst wedding experience

of my life!"). However, the bulk of the post is nonrhetorical and factual (*e.g.*, "[t]he owners did not make the rules clear"; "when they saw something they didn't like they waited until the day of the wedding to bring it up"; "[w]e were told we had to leave at 9pm, but at 8:15 they started telling the guests that they had to leave immediately"; "[t]he 'bridal suite' was a tool shed that was painted pretty, but a shed all the same"). Those factual details demonstrate that defendant's statements are not mere hyperbole and, more to the point, would not be brushed off as mere hyperbole by a reasonable reader of those statements. *See Wheeler v. Green*, 286 Or 99, 104-06, 593 P2d 777 (1979) (analyzing whether recipient of statements would have understood statements to defame the plaintiff in order to determine whether statements were defamatory).

Third, defendant claims that plaintiffs qualify as limited public figures who were required to present evidence that defendant acted with malice in order to establish a *prima facie* case of defamation. However, the evidence at this stage of the proceedings does not show that plaintiffs are public figures or limited public figures, as that phrase has been interpreted by Oregon courts, and defendant is not a "media defendant." *See Bank of Oregon v. Independent News*, 298 Or 434, 441, 693 P2d 35 (1985), *cert den*, 474 US 826 (1985) ("Two recent cases have held that liability applies where the plaintiff is not a 'public figure' and the defendant is not a part of the media." (Citing *Wheeler*, 286 Or 99; *Harley-Davidson v. Markley*, 279 Or 361, 568 P2d 1359 (1977).)); *id.* at 443 ("Merely opening one's doors to the public, offering stock for public sale, advertising, etc., even if considered a thrusting of one's self into matters of public interest, is not sufficient to establish that a corporation is a public figure."). As a result, Neumann was not required to present evidence of malice in order to establish a *prima facie* case of defamation under ORS 31.150.

Finally, defendant argues that, to establish a *prima facie* case of defamation, Neumann was required to present evidence rebutting his affirmative defense that he had a qualified privilege to make the statements that he did, or showing that he abused that qualified privilege. But a claim of privilege is an affirmative defense to a claim for

defamation on which a defendant bears the burden of proof. *Walsh v. Consolidated Freightways*, 278 Or 347, 355, 563 P2d 1205 (1977). On this record, we cannot conclude as a matter of law that defendant was privileged to make the allegedly defamatory statements regarding Neumann.[8] *See Young*, 259 Or App at 507-10 (in resolving a special motion to strike, a court assesses a defendant's evidence only to evaluate whether the defendant's evidence defeats the plaintiff's claim as a matter of law).

Accordingly, we conclude that the trial court erred when it struck Neumann's defamation claim, and we reverse the judgment of dismissal for that reason. Because plaintiffs have not separately addressed the trial court's dismissal of the other claims in their briefing on appeal, we do not reverse the court's decision to strike those claims.[9] We note, however, that those claims were dismissed without prejudice—as was required by ORS 31.150(1)—and that the trial court retains its authority on remand under ORCP 23 to entertain proposed amendments to the pleadings, as appropriate. ORCP 23; *Allen v. Premo*, 251 Or App 682, 685-87, 284 P3d 1199 (2012). Finally, because we have reversed the judgment in defendant's favor, we also vacate the attorney fee award because it was predicated on the trial court's determination that the special motion to strike should be granted as to all of plaintiffs' claims. ORS 20.220(3). Thus, defendant's cross-appeal, challenging the fee award, is moot.

## IV. CONCLUSION

For the foregoing reasons, the trial court erred by granting the special motion to strike Neumann's defamation claim. We therefore reverse the trial court's decision as to

---

[8] We save for another day the question of whether and to what extent ORS 31.150 authorizes parties to litigate affirmative defenses in the context of a special motion to strike.

[9] In their opening brief, plaintiffs did not discuss the elements of their other claims, or present any argument that the trial court erred by concluding that they failed to present *prima facie* evidence of those elements. In his answering brief, defendant argued in section E that plaintiffs' evidence did not establish a *prima facie* case on Neumann's claim for invasion of privacy by false light, or on either of Dancing Deer Mountain's claims. In their reply brief, plaintiffs did not respond to section E of defendant's answering brief regarding the other three claims, even though plaintiffs otherwise responded to defendant's brief section by section.

the defamation claim, vacate the attorney fee award, and remand for further proceedings consistent with this opinion.

On appeal, reversed and remanded as to defamation claim, attorney fee award vacated and remanded; otherwise affirmed. Cross-appeal dismissed as moot.