706 March 3, 2016 No. 11

IN THE SUPREME COURT OF THE
STATE OF OREGON

Carol C. NEUMANN
and Dancing Deer Mountain, LLC,
an Oregon domestic limited liability company,
*Respondents on Review,*

*v.*

Christopher LILES,
*Petitioner on Review.*

(CC 121103711; CA A149982; SC S062575)

On review from the Court of Appeals.*

Argued and submitted May 12, 2015.

Linda K. Williams, Portland, argued the cause and filed the brief for petitioner on review.

No appearance *contra*.

Derek D. Green, Davis Wright Tremaine LLP, Portland, filed the brief for *amici curiae* Reporters Committee for Freedom of the Press, City of Roses Newspaper Company (dba Willamette Week), Gannett Co., Inc., Meredith Corporation (dba KPTV), Oregon Association of Broadcasters, Oregon Newspaper Publishers Association, Oregon Public Broadcasting, Oregonian Publishing Company LLC (dba The Oregonian Media Group), and Western Communications, Inc. (dba The Bulletin of Bend).

Daniel W. Meek, Portland, filed the brief for *amicus curiae* Policy Initiatives Group.

Before Balmer, Chief Justice, and Kistler, Walters, Landau, Brewer, and Baldwin, Justices, and Linder, Senior Judge.**

_____

\* Appeal from Lane County Circuit Court, Charles D. Carlson, Judge. 261 Or App 567, 323 P3d 521 (2014)

\*\* Nakamoto, J., did not participate in the consideration or decision of this case.

BALDWIN, J.

The decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals. The decision of the circuit court that dismissed plaintiffs' defamation claim is affirmed.

**BALDWIN, J.**

This case requires us to decide whether a defamatory statement made in an online business review is entitled to protection under the First Amendment. To make that decision, we follow the test developed by the Ninth Circuit in *Unelko Corp. v. Rooney*, 912 F2d 1049 (9th Cir 1990), *cert den*, 499 US 961 (1991), to determine whether a reasonable factfinder could conclude that an allegedly defamatory statement touching on a matter of public concern implies an assertion of objective fact and is therefore not constitutionally protected. Applying that test, we conclude that the online review at issue in this case is entitled to First Amendment protection. We therefore reverse the decision of the Court of Appeals to the contrary and remand the case to the Court of Appeals to resolve a disputed attorney fee issue.

## I. BACKGROUND

Plaintiff Carol Neumann (Neumann) is an owner of plaintiff Dancing Deer Mountain, LLC (Dancing Deer Mountain), a business that arranges and performs wedding events at a property owned by Neumann. Defendant, Christopher Liles (Liles), was a wedding guest who attended a wedding and reception held on Neumann's property in June 2010. Two days after those events, Liles posted a negative review about Neumann and her business on Google Reviews, a publicly accessible website where individuals may post comments about services or products they have received.

The review was entitled, "Disaster!!!!! Find a different wedding venue," and stated:

> "There are many other great places to get married, this is not that place! The worst wedding experience of my life! The location is beautiful the problem is the owners. Carol (female owner) is two faced, crooked, and was rude to multiple guest[s]. I was only happy with one thing. It was a beautiful wedding, when it wasn't raining and Carol and Tim stayed away. The owners did not make the rules clear to the people helping with set up even when they saw something they didn't like they waited until the day of the wedding to bring it up. They also changed the rules as they saw fit. We were told we had to leave at 9pm, but at 8:15 they

started telling the guests that they had to leave immediately. The 'bridal suite' was a tool shed that was painted pretty, but a shed all the same. In my opinion [s]he will find a why [*sic*] to keep your $500 deposit, and will try to make you pay even more."

A few months later, Neumann and Dancing Deer Mountain filed a defamation claim for damages against Liles.[1] Liles then filed a special motion to strike under ORS 31.150, Oregon's Anti-Strategic Lawsuits Against Public Participation (anti-SLAPP) statute.[2] Specifically, Liles based his motion on provisions of ORS 31.150(2) relating to cases involving statements presented "in a place open to the public or a public forum in connection with an issue of public interest" or "other conduct in furtherance of *** the constitutional right of free speech in connection with a public issue or an issue of public interest." ORS 31.150(2)(c), (d). In response, Neumann and Dancing Deer Mountain submitted evidence to support a *prima facie* case of defamation, as required by ORS 31.150(3).

After a hearing, the trial court allowed Liles's motion to strike and entered a judgment of dismissal of Neumann's defamation claim without prejudice. ORS 31.150(1) (so providing when trial court grants special motion to strike). Neumann appealed, assigning error to the trial court's ruling.

The Court of Appeals reversed the judgment, reasoning that "the evidence submitted by plaintiffs, if credited, would permit a reasonable factfinder to rule in Neumann's favor on the defamation claim, and the evidence submitted by [Liles] does not defeat Neumann's claim as a matter of law." *Neumann v. Liles*, 261 Or App 567, 575, 323 P3d 521 (2014). The court focused its analysis on whether Liles's statements were capable of a defamatory meaning—that is, whether his statements falsely ascribed to Neumann conduct incompatible with the proper conduct of a wedding venue operator. *Id*.

---

[1] Although Neumann and Dancing Deer Mountain asserted additional claims against Liles, only the trial court's dismissal of the defamation claim was challenged by Neumann and Dancing Deer Mountain on appeal. *See Neumann v. Liles*, 261 Or App 567, 580 n 9, 323 P3d 521 (2014) (so explaining).

[2] ORS 31.150 to 31.155 are set out in the appendix of this opinion.

at 576-77. The court concluded that several of Liles's state-
ments, such as his statements that Neumann was "rude to
multiple guest[s]," that she is "crooked," and that she "will
find a [way] to keep your $500 deposit," could reasonably be
interpreted as defamatory. *Id.* The court therefore concluded
that the trial court had erred when it struck Neumann's def-
amation claim. *Id.*[3]

In so concluding, the Court of Appeals rejected Liles's
arguments that "his statements were nonactionable opinion"
and that "his statements are not defamatory because, in his
view, the context of the statements demonstrates that they
are figurative, rhetorical, or hyperbolic." *Id.* at 578. In the
court's view, Liles's statements were not protected as opin-
ion, because they "reasonably could be understood to state
facts or imply the existence of undisclosed defamatory facts."
*Id.* The court also disagreed with Liles that his statements
were, as a whole, hyperbolic. Rather, the court concluded
that Liles had included various factual details in his review
and that a reasonable reader therefore would not interpret
his statements to be "mere hyperbole." *Id.* at 578-79.

We allowed Liles's petition for review to determine
how an actionable statement of fact is distinguished from a
constitutionally protected expression of opinion in a defama-
tion claim and whether the context in which a statement is
made affects that analysis.

## II.   ANALYSIS

On review, Liles argues that his online review of
Neumann's venue is entitled to protection under the First
Amendment.[4] Specifically, he contends that his review,
when read in the context of informal online communication,
is properly understood as expressing merely his subjective
opinion about the venue that he was reviewing. He also

---

[3]  As we will later explain, based on its disposition, the court did not reach
Neumann's further argument that her claim was not subject to the provisions
of Oregon's anti-SLAPP statute, ORS 31.150 - 31.155.  Nor did the court resolve
Liles's cross-assignment of error relating to the amount of attorney fees awarded
by the trial court under that statute.

[4]  The parties have not raised the issue of whether Liles's statements are pro-
tected under Article I, section 8, of the Oregon Constitution.  We therefore do not
express an opinion on that issue.

contends that the statements in his review are not provable as true or false. Regarding the words that the Court of Appeals concluded to be capable of defamatory meaning, such as "rude" and "crooked," he argues that those words are too vague to imply an assertion of fact.[5]

Although our determination of the legal sufficiency of Neumann's defamation claim hinges on whether Liles's statements are protected under the First Amendment, we begin our analysis by examining the common-law origins of the tort.

## A.   *Common Law of Defamation*

This court has recognized a common-law action for defamation for injury to reputation for over 150 years. *See Hurd v. Moore*, 2 Or 85 (1863) (false statement by defendant that plaintiff had burned defendant's house). The roots of that tort run even deeper: the English common law had recognized the tort of defamation long before the formation of the American republic. *See Milkovich v. Lorain Journal Co.*, 497 US 1, 11, 110 S Ct 2695, 111 L Ed 2d 1 (1990) ("Since the latter half of the 16th century, the common law has afforded a cause of action for damage to a person's reputation by the publication of false and defamatory statements.") (citing L. Eldredge, *Law of Defamation* 5 (1978)).

To establish a claim for defamation, a plaintiff must show that a defendant made a defamatory statement about the plaintiff and published the statement to a third party. *Wallulis v. Dymowski*, 323 Or 337, 342-43, 918 P2d 755 (1996) (so holding). A defamatory statement is one that would subject the plaintiff "to hatred, contempt or ridicule *** [or] tend to diminish the esteem, respect, goodwill or confidence in which [the plaintiff] is held or to excite adverse, derogatory or unpleasant feelings or opinions against [the plaintiff]." *Farnsworth v. Hyde*, 266 Or 236, 238, 512 P2d 1003 (1973) (internal quotation marks omitted). In the professional context, a statement is defamatory if it falsely

---

[5] Liles also argues that Neumann is a limited purpose public figure and was therefore required under the First Amendment to present evidence of actual malice. Because we conclude, as discussed below, that Neumann's claim is not legally sufficient, we do not address that argument.

"ascribes to another conduct, characteristics or a condition incompatible with the proper conduct of his lawful business, trade, [or] profession." *Brown v. Gatti*, 341 Or 452, 458, 145 P3d 130 (2006) (internal quotation marks omitted).

Some defamatory statements are actionable *per se*—that is, without proof of pecuniary loss or special harm. Libel, that is, defamation by written or printed words, is actionable *per se*. *Hinkle v. Alexander*, 244 Or 271, 277, 417 P2d 586 (1966) (on rehearing). Slander, which is defamation by spoken words, also may be actionable *per se* under certain circumstances. For instance, spoken words that injure a plaintiff in his or her profession or trade may constitute slander *per se*. *See, e.g.*, *Wheeler v. Green*, 286 Or 99, 124, 593 P2d 777 (1979) (where defendant accuses plaintiff of misconduct or dishonesty in performance of plaintiff's profession or employment, matter is "actionable without proof of specific harm"); *see also Barnett v. Phelps*, 97 Or 242, 244-45, 191 P 502 (1920) (discussing classes of spoken words that are actionable *per se*).

At early common law, defamatory statements were generally deemed actionable regardless of whether they were statements of fact or expressions of opinion. "However, due to concerns that unduly burdensome defamation laws could stifle valuable public debate, the privilege of 'fair comment' was incorporated into the common law as an affirmative defense to an action for defamation." *Milkovich*, 497 US at 13. Under the "fair comment" privilege, a statement was protected if "it concerned a matter of public concern, was upon true or privileged facts, represented the actual opinion of the speaker, and was not made solely for the purpose of causing harm." *Id*. at 13-14; *see Bank of Oregon v. Independent News,* 298 Or 434, 437, 693 P2d 35, *cert den*, 474 US 826 (1985) (under qualified privilege of "fair comment and criticism," a defendant is not liable if publication was made in good faith and without malice); *Peck v. Coos Bay Times Pub. Co. et al.*, 122 Or 408, 421, 259 P 307 (1927) (same). The "fair comment" privilege thus served "to strike the appropriate balance between the need for vigorous public discourse and the need to redress injury to citizens wrought by invidious or irresponsible speech." *Milkovich*, 497 US at 14.

B. *First Amendment Limitations*

Since the development of the common-law privilege of "fair comment," the United States Supreme Court has determined that the First Amendment places limits on the application of the state law of defamation. *See Milkovich*, 497 US at 13-17 (summarizing common-law origins and First Amendment limitations on state defamation law). The protection afforded under the First Amendment to statements of opinion on matters of public concern reached what one court called its "high-water mark" in *Gertz v. Robert Welch, Inc.*, 418 US 323, 94 S Ct 2997, 41 L Ed 2d 789 (1974). *Keohane v. Stewart*, 882 P2d 1293, 1298 (Colo 1994), *cert den*, 513 US 1127 (1995) (so characterizing the Supreme Court's opinion in *Gertz*). In *Gertz*, the United States Supreme Court stated in *dictum*:

> "Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas. But there is no constitutional value in false statements of fact."

418 US at 339-40 (footnote omitted). A majority of state and federal courts interpreted *Gertz* to have announced that expressions of opinion were absolutely privileged under the First Amendment. *See, e.g.*, *Yetman v. English*, 168 Ariz 71, 75, 811 P2d 323, 327 (1991) (acknowledging considerable body of federal law, emanating from *Gertz dictum*, "holding that the expression of opinion is absolutely privileged under the first amendment"); *Keohane*, 882 P2d at 1298 ("The *Gertz* dicta was read by many courts to establish that statements of opinion are not actionable."); *Paint Brush Corp. v. Neu*, 1999 SD 120, ¶ 42, 599 NW2d 384, 395 (1999) ("Most courts, including ours, apparently understood the *Gertz* passage to mean 'opinions' (not just ideas) are absolutely protected by the First Amendment of the United States Constitution."); *see also* Rodney A. Smolla, *Law of Defamation* § 6:11, 6-21 (2d ed 1999) (noting that *Gertz dictum* had appeared to impose "upon both state and federal courts the duty, as a matter of constitutional obligation, to distinguish facts from opinions in order to provide opinions with the requisite absolute First Amendment protection").

The Supreme Court in *Milkovich*, however, dispelled the notion that it had announced a "wholesale defamation exemption for anything that might be labeled 'opinion.'" 497 US at 18. In that case, a newspaper published a column that implied that Milkovich, a high school wrestling coach, had lied under oath in a judicial proceeding after his team was involved in an altercation at a wrestling match and the coach's team was placed on probation. *Id.* at 3-5. Milkovich filed a libel action against the newspaper and a reporter, alleging that the defendants had accused him of committing the crime of perjury, thereby damaging him in his occupation of coach and teacher. *Id.* at 6-7.

The Supreme Court rejected the defendants' argument that all defamatory statements that are categorized as "opinion" as opposed to "fact" enjoy blanket First Amendment protection. *Id.* at 17-18. The Court clarified that the oft-cited passage in *Gertz* had been "merely a reiteration of Justice Holmes' classic 'marketplace of ideas' concept." *Id.* at 18 (citing *Abrams v. United States*, 250 US 616, 630, 40 S Ct 17, 63 L Ed 1173 (1919) (Holmes, J., dissenting) ("[T]he ultimate good desired is better reached by free trade in ideas—*** the best test of truth is the power of the thought to get itself accepted in the competition of the market[.]")). Thus, *Gertz* had not created an additional separate constitutional privilege for anything that might be labeled an "opinion." In the Court's view, such an interpretation of *Gertz* would "ignore the fact that expressions of 'opinion' may often imply an assertion of objective fact." *Id.*

Ultimately, the Court refused to create a separate constitutional privilege for "opinion," concluding instead that existing constitutional doctrine adequately protected the "uninhibited, robust, and wide-open" debate on public issues. *Id.* at 20-21. Under that existing doctrine, full constitutional protection is afforded to statements regarding matters of public concern that are not sufficiently factual to be capable of being proved false and statements that cannot reasonably be interpreted as stating actual facts. *Id.* at 19-20 (citing *Philadelphia Newspapers, Inc. v. Hepps*, 475 US 767, 106 S Ct 1558, 89 L Ed 2d 783 (1986), and *Hustler Magazine, Inc. v. Falwell*, 485 US 46, 108 S Ct 876, 99 L Ed 2d 41

(1988)). The dispositive question in determining whether a defamatory statement is constitutionally protected, according to the Court, is whether a reasonable factfinder could conclude that the statement implies an assertion of objective fact about the plaintiff. *Id.* at 21.

Applying that rule to the facts of *Milkovich*, the Court determined that a reasonable factfinder could conclude that the statements in the newspaper column implied a factual assertion that Milkovich had perjured himself in a judicial proceeding. *Id.* The Court considered various factors. First, the Court noted that the column had not used "the sort of loose, figurative, or hyperbolic language" that would negate the impression that the writer was seriously maintaining that Milkovich had committed the crime of perjury. *Id.* Second, the Court concluded the "general tenor of the article" did not negate that impression. *Id.* Third, in the Court's view, the accusation that Milkovich had committed perjury was "sufficiently factual to be susceptible of being proved true or false." *Id.* Accordingly, the Court held that the column did not enjoy constitutional protection.

The analytical response of both lower federal courts and state courts to *Milkovich* has been varied. *See* David A. Elder, *Defamation: A Lawyer's Guide* § 8:15 (2003) (noting that courts have interpreted *Milkovich* in "widely varying ways," from viewing *Milkovich* as not changing the law but rather merely ensconcing pre-*Milkovich* opinion-fact criteria to viewing *Milkovich* as effectively overruling existing doctrine). Many courts have concluded that, although the Court in *Milkovich* rejected a strict dichotomy between fact and opinion, the Court left the constitutional framework otherwise intact. Those courts generally have continued to apply the factors that they had developed before *Milkovich* for identifying constitutionally protected expressions of opinion. *See, e.g.*, *Yates v. Iowa West Racing Ass'n*, 721 NW2d 762, 771 (Iowa 2006) (concluding that four-factor test developed before *Milkovich* was still good law and applying that test). Other courts, however, have interpreted *Milkovich* as rendering obsolete the various tests that courts had adopted after *Gertz* for distinguishing fact from opinion. *See, e.g.*, *Bentley v. Bunton*, 94 SW3d 561, 580-81 (Tex

2002) (concluding that *Milkovich* analysis supplants tests
previously used by lower courts for distinguishing fact from
opinion). Still other courts have looked to their state con-
stitutions to determine whether liability may be imposed
for statements of opinion. *See, e.g.*, *Vail v. The Plain Dealer
Publ'g Co.*, 72 Ohio St 3d 279, 281, 649 NE2d 182, 185 (Ohio
1995), *cert den*, 516 US 1043 (1996) (state constitution pro-
vides separate and independent guarantee of protection for
opinion, ancillary to freedom of press).

This court has had only one prior occasion to inter-
pret and apply *Milkovich*, in *Reesman v. Highfill*, 327 Or 597,
965 P2d 1030 (1998). In that case, an air-show pilot brought
a defamation claim against members of a citizens' commit-
tee that opposed an airport expansion. *Id.* at 599. The defen-
dants had published and distributed a flyer to residents of
towns near the airport; that flyer included statements about
the plaintiff and attributed certain statements to him. *Id.*
at 600-01. This court rejected the plaintiff's argument that
those statements had defamatory implications. *Id.* at 604-
06. Additionally, the court concluded that two of those state-
ments were constitutionally protected expressions of opinion:
"Such statements, which cannot be interpreted reasonably
as stating actual facts, are not actionable because they are
constitutionally protected." *Id.* at 606 (citing *Milkovich*, 497
US at 20, for proposition that statement of opinion relating
to matters of public concern that does not contain a prov-
ably false factual connotation will receive full constitutional
protection). The court in *Reesman* did not, however, analyze
*Milkovich* in any detail.

This case therefore presents the first occasion for
this court to announce a framework for analyzing whether
a defamatory statement is entitled to First Amendment pro-
tection.[6] In the absence of existing law from this court, we
look to the approaches of other jurisdictions for guidance. Of
those, we find particularly persuasive the approach articu-
lated by the Ninth Circuit.

---

[6] Ordinarily, we would look to our state constitution before addressing any
federal constitutional issues. As noted, however, the parties to this case have
argued this issue solely under the First Amendment and have not invoked
Article I, section 8, of the Oregon Constitution.

In *Unelko*, 912 F2d 1049, decided shortly after *Milkovich*, the Ninth Circuit addressed whether certain statements that Andy Rooney had made during two broadcasts of "60 Minutes" were protected as opinion under the First Amendment. The court concluded that, after *Milkovich*, "the threshold question in defamation suits is not whether a statement might be labeled 'opinion,' but rather whether a reasonable factfinder could conclude that the statement impl[ies] an assertion of objective fact." *Id.* at 1053 (internal quotation marks omitted). To resolve that threshold question, the Ninth Circuit drew from the factors that the Supreme Court had considered in *Milkovich* and announced a three-part test: (1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact; (2) whether the defendant used figurative or hyperbolic language that negates that impression; and (3) whether the statement in question is susceptible of being proved true or false. *Id.* at 1053.

Since *Unelko*, the Ninth Circuit has consistently used that three-part inquiry to determine whether a reasonable factfinder could conclude that a statement implies an assertion of objective fact. *E.g.*, *Obsidian Finance Group, LLC v. Cox*, 740 F3d 1284, 1293 (9th Cir 2011), *cert den*, ___ US ___, 134 S Ct 2680 (2014); *Gardner v. Martino*, 563 F3d 981, 986-87 (9th Cir 2009); *Partington v. Bugliosi*, 56 F3d 1147, 1152-53 (9th Cir 1995); *see also Knievel v. ESPN*, 393 F3d 1068, 1074-75 (9th Cir 2005) (articulating court's three-part "totality of the circumstances" test as examining (1) "the statement in its broad context, which includes the general tenor of the entire work, the subject of the statements, the setting, and the format of the work"; (2) "the specific context and content of the statements, analyzing the extent of figurative or hyperbolic language used and the reasonable expectations of the audience in that particular situation"; and (3) "whether the statement itself is sufficiently factual to be susceptible of being proved true or false"); *Underwager v. Channel 9 Australia*, 69 F3d 361, 366 (9th Cir 1995) (same).

Several other courts also have expressly adopted the Ninth Circuit's test. *See, e.g.*, *Adelson v. Harris*, 973 F Supp 2d 467, 488-89 (SDNY 2013) (applying Ninth Circuit's

three-part test, noting that test, "while not binding on this court, is instructive"); *Dodson v. Dicker*, 306 Ark 108, 111, 812 SW2d 97, 98 (1991) (concluding that "the Ninth Circuit's method of analysis is a reasonable extension of the *Milkovich* doctrine" and following that method); *Gold v. Harrison*, 88 Haw 94, 101, 962 P2d 353, 360 (1998), *cert den*, 526 US 1018 (1999) (adopting "three-part test as set forth by the Ninth Circuit to determine whether a statement is false and defamatory" under First Amendment and equivalent provision of state constitution); *Marchant Inv. & Mgmt. Co. v. St. Anthony West Neighborhood Org.*, 694 NW2d 92, 96 (Minn Ct App 2005) (finding federal, post-*Milkovich* considerations instructive and applying them to determine whether defendant's statements constitute defamation; citing Ninth Circuit's decision in *Partington*, 56 F3d at 1153); *Moats v. Republican Party of Nebraska*, 281 Neb 411, 425-26, 796 NW2d 584, 596, *cert den*, ___ US ___, 132 S Ct 251 (2011) (applying three-part test to determine whether statement implied false assertion of fact or protected opinion; citing Ninth Circuit's decision in *Gardner*, 563 F3d at 987).

We agree with those courts that have found the Ninth Circuit's three-part inquiry to be a sound approach for determining whether a statement is entitled to First Amendment protection. The Ninth Circuit's test appropriately considers the totality of the relevant circumstances, including the context in which particular statements were made and the verifiability of those statements. The Ninth Circuit's test is also a reasonable interpretation of *Milkovich*. It explicitly incorporates the factors that the Supreme Court itself considered in deciding *Milkovich—i.e.*, the general tenor of a defendant's publication, whether the publication uses figurative or hyperbolic language, and whether the publication is susceptible of being proved true or false. *See Milkovich*, 497 US at 21-22 (applying those factors). Accordingly, we follow the Ninth Circuit's three-part framework for whether a reasonable factfinder could conclude that a given statement implies a factual assertion.

In summary, to determine whether a defamatory statement is protected under the First Amendment, the first question is whether the statement involves a matter of public concern. If it does, then the dispositive question

is whether a reasonable factfinder could conclude that the statement implies an assertion of objective fact. To answer that question, we adopt the following three-part inquiry: (1) whether the general tenor of the entire publication negates the impression that the defendant was asserting an objective fact; (2) whether the defendant used figurative or hyperbolic language that negates that impression; and (3) whether the statement in question is susceptible of being proved true or false. Under that framework, we do not consider the defendant's words in isolation. Rather, we must consider "the work as a whole, the specific context in which the statements were made, and the statements themselves to determine whether a reasonable factfinder could conclude that the statements imply a false assertion of objective fact and therefore fall outside the protection of the First Amendment." *Partington*, 56 F3d at 1153.

## C.  *Application of First Amendment Limitations*

Before we apply that test to the facts of this case, we repeat, for convenience, Liles's review of Dancing Deer Mountain that he posted on Google.com:

> "Disaster!!!!! Find a different wedding venue
>
> "There are many other great places to get married, this is not that place! The worst wedding experience of my life! The location is beautiful the problem is the owners. Carol (female owner) is two faced, crooked, and was rude to multiple guest[s]. I was only happy with one thing. It was a beautiful wedding, when it wasn't raining and Carol and Tim stayed away. The owners did not make the rules clear to the people helping with set up even when they saw something they didn't like they waited until the day of the wedding to bring it up. They also changed the rules as they saw fit. We were told we had to leave at 9pm, but at 8:15 they started telling the guests that they had to leave immediately. The 'bridal suite' was a tool shed that was painted pretty, but a shed all the same. In my opinion [s]he will find a why [*sic*] to keep your $500 deposit, and will try to make you pay even more."

Initially, we conclude that, if false, several of Liles's statements are capable of a defamatory meaning. Throughout his review, Liles ascribed to Neumann conduct that is incompatible with the proper conduct of a wedding venue

operator and, as the Court of Appeals noted, "inconsistent with a positive wedding experience." *Neumann*, 261 Or App at 577. As a result, a reasonable factfinder could conclude that Liles's statements were defamatory if he or she found that the statements were false. *See Brown*, 341 Or at 458 (statement is defamatory in professional context if it falsely ascribes to the plaintiff conduct that is incompatible with proper conduct of her lawful business). Moreover, because, if false, Liles's defamatory statements were written and published—and therefore libelous—they are actionable *per se*. *See Hinkle*, 244 Or at 277 (libel is actionable *per se*). The question remains, however, whether they are nevertheless protected under the First Amendment.

To resolve that question, we must first determine, by examining the content, form, and context of Liles's statements, whether those statements involve matters of public concern. *Dun & Bradstreet, Inc. v. Greenmoss Builders*, 472 US 749, 761, 105 S Ct 2939, 86 L Ed 2d 593 (1985) (whether statement addresses matter of public concern must be determined by statement's content, form, and context, as revealed by whole record). Neumann has not disputed that Liles's statements involve matters of public concern, and we readily conclude that they do. Liles's review was posted on a publicly accessible website, and the content of his review related to matters of general interest to the public, particularly those members of the public who are in the market for a wedding venue. *See Unelko*, 912 F2d at 1056 (Andy Rooney's statement on "60 Minutes" that a consumer product "didn't work" involved matter of public concern, because it "was of general interest and was made available to the general public").

Next, we must determine whether a reasonable factfinder could interpret Liles's statements as implying assertions of objective fact. Applying the three-part inquiry that we articulated above, we first consider whether the general tenor of the entire work negates the impression that Liles was asserting objective facts about Neumann. From the outset, it is apparent that the review is describing Liles's personal view of Neumann's wedding venue, calling it a "Disaster!!!!!" The general tenor of the piece, beginning with the word "Disaster," is that, in Liles's subjective opinion,

the services were grossly inadequate and that the business was poorly operated. However, read independently, two sentences in the review could create the impression that Liles was asserting an objective fact: "Carol (female owner) is two faced, crooked, and was rude to multiple guest[s]. *** In my opinion [s]he will find a [way] to keep your $500 deposit, and will try to make you pay even more." Standing alone, those statements could create the impression that Liles was asserting the fact that Neumann had wrongfully kept a deposit that she was not entitled to keep. In the context of the entire review, however, those sentences do not leave such an impression. Rather, the review as a whole reveals that Liles was an attendee at the wedding in question and suggests that he did not himself purchase wedding services from Neumann. The general tenor of the review thus reflects Liles's negative personal and subjective impressions and reactions as a guest at the venue and negates the impression that Liles was asserting objective facts.

We next consider whether Liles used figurative or hyperbolic language that negates the impression that he was asserting objective facts. Although the general tenor of the review reveals its hyperbolic nature more clearly than do the individual statements contained therein, several statements can be characterized as hyperbolic. In particular, the title of the review—which starts with the word "Disaster" and is followed by a histrionic series of exclamation marks— is hyperbolic and sets the tone for the review. The review also includes the exaggerative statements that this was "The worst wedding experience of [Liles's] life!" and that Liles was "only happy with one thing" about the wedding. Such hyperbolic expressions further negate any impression that Liles was asserting objective facts.

Finally, we consider whether Liles's review is susceptible of being proved true or false. As discussed, Liles's statements generally reflect a strong personal viewpoint as a guest at the wedding venue, which renders them not susceptible of being proved true or false. Again, the sentences quoted above referring to Neumann as "crooked" and stating that, "[i]n my opinion [s]he will find a [way] to keep your $500 deposit, and will try to make you pay even more" could,

standing alone, create the impression that Liles was asserting facts about Neumann. However, viewed in the context of the remainder of the review, those statements are not provably false. The general reference to Neumann as "crooked" is not a verifiable accusation that Neumann committed a specific crime. Moreover, in light of the hyperbolic tenor of the review, the use of the word "crooked" does not suggest that Liles was seriously maintaining that Neumann had, in fact, committed a crime. Similarly, Liles's statement that "[i]n my opinion [Neumann] will find a [way] to keep your $500 deposit, and will try to make you pay even more" is not susceptible of being proved true or false. That statement is explicitly prefaced with the words, "In my opinion"—thereby alerting the reader to the fact that what follows is a subjective viewpoint. Of course, those words alone will not insulate an otherwise factual assertion from liability. *See Milkovich*, 497 US at 19 (simply couching statements in terms of opinion does not dispel their defamatory implications). However, given that Liles—as a mere guest at the wedding—presumably did not pay the deposit for the wedding involved in this case, his speculation that Neumann would try to keep a couple's deposit is not susceptible of being proved true or false.

Based on the foregoing factors, we conclude that a reasonable factfinder could not conclude that Liles's review implies an assertion of objective fact. Rather, his review is an expression of opinion on matters of public concern that is protected under the First Amendment. We therefore further conclude that the trial court did not err in dismissing Neumann's claim, and we reverse the Court of Appeals determination to the contrary.

D.   *Remaining Attorney Fee Dispute*

As noted, the trial court granted Liles's special motion to strike under the provisions of Oregon's anti-SLAPP statute, ORS 31.150 to 31.155, and entered a judgment of dismissal of Neumann's action without prejudice under ORS 31.150(1). SLAPP, as earlier noted, is an acronym that stands for "strategic lawsuit against public participation." *See generally* George W. Pring, *SLAPPs: Strategic Lawsuits Against Public Participation*, 7 Pace Envtl L Rev 3 (1990).

Oregon's anti-SLAPP statute creates an expedited procedure for dismissal of certain nonmeritorious civil cases without prejudice at the pleading stage. *See Staten v. Steel*, 222 Or App 17, 29, 191 P3d 778 (2008), *rev den*, 345 Or 618 (2009) (purpose of ORS 31.150 is "to provide for the dismissal of claims against persons participating in public issues \*\*\* before the defendant is subject to substantial expenses in defending against them"); *Horton v. Western Protector Ins. Co.*, 217 Or App 443, 452, 176 P3d 419 (2008) ("[I]t is apparent that the legislature envisioned a process that would provide an expedited resolution to the litigation that is the subject of ORS 31.150 to 31.155.") (citing legislative history).

On appeal, the Court of Appeals summarized the issues presented as follows:

"On appeal, plaintiffs assert that the trial court erred in two respects: by concluding that their action was subject to the anti-SLAPP procedures, and by concluding that Neumann had not established a *prima facie* case of defamation. On cross-appeal, defendant contends that the trial court erred by awarding him less than the full amount of attorney fees that he requested."

*Neumann*, 261 Or App at 572. The court reached only the question of whether Neumann had established a *prima facie* case of defamation, concluding that she had and reversing the trial court on that ground. *Id.* at 575. The court did not resolve the question of whether Neumann's action was of a type subject to the provisions of the anti-SLAPP statute. *Id.* at 573-74. The trial court made an award of attorney fees to Liles under ORS 131.152(3), after Liles prevailed on his special motion to strike. Further, based on its disposition, the court did not reach Liles's cross-appeal challenging the amount of the attorney fee award in his favor and instead vacated that award. *Id.* at 580-81. Ordinarily, having affirmed the trial court's dismissal of Neumann's action, we would not need to determine whether her claim was subject to the anti-SLAPP statute. Because the trial court awarded attorney fees under the anti-SLAPP statute, however, we remand the remaining issues under that statute to the Court of Appeals for decision.

## III.    CONCLUSION

For the reasons we have explained, we conclude that the trial court did not err in dismissing Neumann's defamation claim, because Liles's statements are entitled to First Amendment protection. We therefore reverse the decision of the Court of Appeals on that issue. We remand to the Court of Appeals to resolve Neumann's argument that her claim is not subject to the provisions of Oregon's anti-SLAPP statute, and to resolve Liles's cross-appeal relating to the amount of attorney fees awarded by the trial court.

The decision of the Court of Appeals is reversed, and the case is remanded to the Court of Appeals. The decision of the circuit court that dismissed plaintiffs' defamation claim is affirmed.

APPENDIX

ORS 31.150 provides:

"(1)   A defendant may make a special motion to strike against a claim in a civil action described in subsection (2) of this section. The court shall grant the motion unless the plaintiff establishes in the manner provided by subsection (3) of this section that there is a probability that the plaintiff will prevail on the claim. The special motion to strike shall be treated as a motion to dismiss under ORCP 21 A but shall not be subject to ORCP 21 F. Upon granting the special motion to strike, the court shall enter a judgment of dismissal without prejudice. If the court denies a special motion to strike, the court shall enter a limited judgment denying the motion.

"(2)   A special motion to strike may be made under this section against any claim in a civil action that arises out of:

"(a)   Any oral statement made, or written statement or other document submitted, in a legislative, executive or judicial proceeding or other proceeding authorized by law;

"(b)   Any oral statement made, or written statement or other document submitted, in connection with an issue under consideration or review by a legislative, executive or judicial body or other proceeding authorized by law;

"(c)   Any oral statement made, or written statement or other document presented, in a place open to the public or a public forum in connection with an issue of public interest; or

"(d)   Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

"(3)   A defendant making a special motion to strike under the provisions of this section has the initial burden of making a prima facie showing that the claim against which the motion is made arises out of a statement, document or conduct described in subsection (2) of this section. If the

defendant meets this burden, the burden shifts to the plaintiff in the action to establish that there is a probability that the plaintiff will prevail on the claim by presenting substantial evidence to support a prima facie case. If the plaintiff meets this burden, the court shall deny the motion.

"(4)   In making a determination under subsection (1) of this section, the court shall consider pleadings and supporting and opposing affidavits stating the facts upon which the liability or defense is based.

"(5)   If the court determines that the plaintiff has established a probability that the plaintiff will prevail on the claim:

"(a)   The fact that the determination has been made and the substance of the determination may not be admitted in evidence at any later stage of the case; and

"(b)   The determination does not affect the burden of proof or standard of proof that is applied in the proceeding."

ORS 31.152 provides:

"(1)   A special motion to strike under ORS 31.150 must be filed within 60 days after the service of the complaint or, in the court's discretion, at any later time. A hearing shall be held on the motion not more than 30 days after the filing of the motion unless the docket conditions of the court require a later hearing.

"(2)   All discovery in the proceeding shall be stayed upon the filing of a special motion to strike under ORS 31.150. The stay of discovery shall remain in effect until entry of the judgment. The court, on motion and for good cause shown, may order that specified discovery be conducted notwithstanding the stay imposed by this subsection.

"(3)   A defendant who prevails on a special motion to strike made under ORS 31.150 shall be awarded reasonable attorney fees and costs. If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney fees to a plaintiff who prevails on a special motion to strike.

"(4)   The purpose of the procedure established by this section and ORS 31.150 and 31.155 is to provide a defendant with the right to not proceed to trial in cases in which the plaintiff does not meet the burden specified in ORS 31.150 (3). This section and ORS 31.150 and 31.155 are to be liberally construed in favor of the exercise of the rights of expression described in ORS 31.150 (2)."

ORS 31.155 provides:

"(1)   ORS 31.150 and 31.152 do not apply to an action brought by the Attorney General, a district attorney, a county counsel or a city attorney acting in an official capacity.

"(2)   ORS 31.150 and 31.152 create a procedure for seeking dismissal of claims described in ORS 31.150 (2) and do not affect the substantive law governing those claims."