Argued and submitted April 5, 2018, reversed and remanded September 2, 2020

Tom LOWELL,
dba Piano Studios and Showcase,
*Plaintiff-Appellant,*

*v.*

Matthew WRIGHT
and Artistic Piano, an Oregon corporation,
*Defendants-Respondents.*

Jackson County Circuit Court
13CV04582; A162785

473 P3d 1094

Plaintiff brought a defamation claim against defendants after defendant Wright posted a negative Google review about plaintiff's piano store. Wright worked at a competitor's piano store—owned by the other defendant, Artistic Piano—at the time that he published the review. The trial court granted summary judgment in favor of defendants, concluding that plaintiff's inability to produce a copy of the actual review precluded him from prevailing on his defamation claim, even if a reasonable factfinder could find that two of Wright's statements implied assertions of objective fact, as relevant to First Amendment protection. Plaintiff appeals. *Held*: The trial court erred in granting summary judgment to defendants. The absence of the actual review from the record is not dispositive; to the extent there is a dispute about the content of the review, the trial court should have viewed the evidence in the light most favorable to the nonmoving party. As for defendants' assertion that Wright's statements are fully protected by the First Amendment, Wright was speaking on a matter of public concern, but his review implied two assertions of objective fact, so defendants were not entitled to summary judgment on that basis. Finally, plaintiff is not required to prove actual malice, but, even if he were, the evidence would be sufficient to defeat defendants' summary judgment motion as to that issue.

Reversed and remanded.

Dan Bunch, Judge.

Linda K. Williams argued the cause and filed the briefs for appellant.

Tracy M. McGovern argued the cause for respondents. Also on the brief were Alicia M. Wilson and Frohnmayer, Deatherage, Jamieson, Moore, Armosino & McGovern, P.C.

Before DeHoog, Presiding Judge, and DeVore, Judge, and Aoyagi, Judge.*

_____
* DeVore, J., *vice* Hadlock, J. pro tempore.

AOYAGI, J.

Reversed and remanded.

AOYAGI, J.

Plaintiff Lowell, the owner of a piano store, brought this defamation action against defendant Wright, an individual, and defendant Artistic Piano, a competitor piano store for whom Wright works, after Wright posted a negative Google review about plaintiff's business. The trial court granted summary judgment in favor of defendants. Plaintiff appeals. For the following reasons, we agree with plaintiff that the trial court erred in granting summary judgment to defendants and, accordingly, reverse and remand.

## I.   FACTS

We state the facts in the light most favorable to plaintiff, as the nonmoving party. ORCP 47 C.

Plaintiff owns and operates Piano Studios and Showcase, a business that, among other things, operates a piano store in Medford. On or about September 3, 2012, Wright and his wife visited plaintiff's store. Wright and his wife had previously visited plaintiff's store in early 2011 and had considered purchasing a piano, but his credit application was denied. After that visit, Wright began working at Artistic Piano, another piano store in Medford. According to Wright, while working at Artistic Piano, he kept hearing from customers about negative experiences at plaintiff's store, so he went to check it out for himself. Wright went to plaintiff's store on a day that he was off work, and he claims not to have told his boss Werner, the owner of Artistic Piano, that he was going. After visiting the store, Wright posted a Google review. According to Wright, he usually posts reviews of any business that he does business with, and he also hoped that describing his experience might spur plaintiff to make some changes to improve his store.

None of the parties retained a copy of the actual review, and plaintiff's efforts to obtain a copy from Google during discovery were unsuccessful. However, viewing the evidence in the light most favorable to plaintiff, the review contained the following statements:

- Wright walked around plaintiff's store for 45 minutes before anyone spoke to him.

- The store "smelled like grandma's attic."

- When Wright did speak to a salesman, the salesman told him that a Yamaha C-7 piano on the showroom floor was about five years old. However, Wright subsequently researched the piano (apparently using its serial number) and discovered that it was 20 years old.

- The salesman further told Wright that plaintiff "can sell new Steinway pianos." However, plaintiff "cannot" sell new Steinway pianos, and "[t]here were no new Steinways in the showroom," which is "like a Chevy dealer not having any Chevrolets on the lot."

- Wright had been warned about plaintiff's store and now knew that it was true that "this guy can't be trusted."

In December 2012, plaintiff saw Wright's review and was upset by it. He tracked down Wright's phone number and called him, while one of plaintiff's employees, Norling, listened and took notes. Wright eventually hung up on plaintiff. After plaintiff's call, Wright talked to his boss, Werner, and showed him the review. According to Wright, he had told Werner about his visit to plaintiff's store after the visit—specifically telling him about the 45-minute wait and showing him a photo of the Yamaha C-7—but he had not told Werner that he was going to write a review. When Werner saw the review after plaintiff's call, he suggested that Wright take it down, which Wright did.

In 2013, plaintiff filed a defamation claim against Wright and Artistic Piano. Plaintiff alleged that Wright had been acting as an agent of Artistic Piano, a direct competitor of plaintiff's, when he posted the Google review. Plaintiff alleged that the review "purported to describe the personal experience of an actual customer" but that "Wright was not a bona fide potential customer." Plaintiff identified three specific statements from the review as false and defamatory assertions of fact:

"a.  That a Yamaha C-7 piano serial number F4910127 on the showroom floor was misrepresented to Wright as being about 5 years old, when in fact said piano was at least

15 years older and less valuable, and this misrepresentation of the age of the instrument was purposely made in an effort to cheat Wright;

"b.  That [plaintiff] misrepresents that he sells new Steinway Pianos, when he actually doesn't; and

"c.  That the above misrepresentations are proof that 'this guy can't be trusted.'"

Plaintiff further alleged that "many in the community would recognize the reference to 'this guy' in the Google review to mean [plaintiff], the owner of the business."

In 2016, defendants moved for summary judgment, asserting that plaintiff could not prevail on his defamation claim because plaintiff could not prove that the statements were false and defamatory, because the statements were nonactionable under the First Amendment to the United States Constitution, and because plaintiff could not prove that defendants acted with actual malice. Plaintiff opposed the motion.

The trial court granted summary judgment to defendants. In its letter opinion, the court first addressed the Steinway statement, concluding that the absence of the actual review from the record was dispositive. The court focused on an inconsistency in the evidence as to whether, in his review, Wright claimed that plaintiff's salesman had told him that plaintiff was a "Steinway dealer" (which it is undisputed that plaintiff was not) or only that plaintiff "could sell new Steinway pianos." Having "reviewed all of the depositions excerpts, affidavits, and other documents filed in the case," the court was "convinced that a trial w[ould] provide no more clarity" on that issue, emphasized the "fine-line distinction between dealing and selling," and stated that it would "not determine that there was a factual dispute based upon the theory that a witness may change testimony very thoroughly developed at deposition." Further, the court considered there to be "insufficient clarity and context" to determine with certainty whether the statement was protected by the First Amendment, given the contextual analysis required by *Neumann v. Liles*, 358 Or 706, 369 P3d 1117 (2016).

The trial court next addressed the Yamaha statement, which it described as "less ambiguous, because witness memories are more precise." The court discussed *Neumann*, 358 Or at 708, in which the Oregon Supreme Court held that a wedding guest's negative statements about a wedding venue in an online review—including describing the venue owner as "two faced" and "crooked" and speculating that she would overcharge customers and improperly retain their deposits—were protected by the First Amendment. The trial court viewed Wright's statements as less damning than the statements in *Neumann*, but it recognized that a factfinder could find that no salesman had told Wright that the C-7 was only five years old. Nonetheless, the court concluded that defendants were entitled to summary judgment, because "inexact memories and very general summaries of the online review" did not allow for "the proper in-depth inquiries."

Finally, the trial court concluded that Wright's statement that "this guy can't be trusted" was "so clearly one of subjective opinion that it cannot be the basis of an action in defamation." Having decided that plaintiff could not prevail on any of the allegedly defamatory statements, the court granted summary judgment to defendants and, subsequently, entered a judgment dismissing plaintiff's defamation claim.

Plaintiff appeals. Although he asserts six assignments of error, plaintiff challenges only one ruling—the trial court's grant of summary judgment to defendants on the defamation claim—assigning error to different aspects of the court's reasoning. Because plaintiff's arguments are better viewed as raising a single assignment of error, we treat them as such. *See* ORAP 5.45(3) (each assignment of error should challenge a specific "ruling"); *Cedartech, Inc. v. Strader*, 293 Or App 252, 256, 428 P3d 961 (2018) ("The assignments are criticisms of the trial court's *reasons* for its result but are not truly *rulings* of the trial court of the sort that are required to be identified in an assignment of error." (Emphases in original.)).

## II.   ANALYSIS

We review the trial court's summary judgment ruling to determine whether any genuine issue of material fact

exists and, if not, whether defendants were entitled to judgment as a matter of law. ORCP 47 C. No genuine issue of material fact exists if, based on the record before the trial court viewed in the light most favorable to plaintiff, "no objectively reasonable juror could return a verdict for the [plaintiff] on the matter that is the subject of the motion for summary judgment." *Id*. Plaintiff has the burden of producing evidence on any issue raised in the motion as to which he would have the burden of persuasion at trial. *Id*.

A.  *Basic First Amendment Principles Relevant to Defamation*

Under Oregon law, a defamation claim has three elements: (1) the making of a defamatory statement; (2) publication of the defamatory material to a third party; and (3) resulting special harm, unless the statement is defamatory *per se* and therefore gives rise to presumptive special harm. *National Union Fire Ins. Co. v. Starplex Corp.*, 220 Or App 560, 584, 188 P3d 332, *rev den*, 345 Or 317 (2008). A defamatory statement is one that would subject the plaintiff to hatred, contempt, or ridicule; would tend to diminish the esteem, respect, goodwill, or confidence in which the plaintiff is held; or would excite adverse, derogatory, or unpleasant feelings or opinions against the plaintiff. *Neumann*, 358 Or at 711. In the professional context, a statement is defamatory if it "'ascribes to another conduct, characteristics or a condition incompatible with the proper conduct of [the person's] lawful business, trade, [or] profession.'" *Fowler v. Stradley*, 238 Or 606, 611, 395 P2d 867 (1964) (quoting *Restatement (First) of Torts* § 573 (1939)); *see also Wheeler v. Green*, 286 Or 99, 124, 593 P2d 777 (1979) (accusation of misconduct or dishonesty in performance of the plaintiff's profession or employment is defamation *per se*).

Some statements are nonactionable, even if false, because of the free-speech protections of the First Amendment. Over the past 50 years, beginning with *New York Times Co. v. Sullivan*, 376 US 254, 84 S Ct 710, 11 L Ed 2d 686 (1964), the United States Supreme Court has issued a series of decisions regarding the First Amendment limitations on state-law defamation claims, resulting in a relatively complex web of standards and considerations relevant to whether a statement is protected by the First Amendment. *See Milkovich v.*

*Lorain Journal Co.*, 497 US 1, 11-23, 110 S Ct 2695, 111 L Ed 2d 1 (1990) (providing general overview of First Amendment principles applicable to state-law defamation claims).

Broadly speaking, the Court has recognized that speech about public officials, speech about public figures, and speech about matters of public concern each implicate the First Amendment. In practice, that means that the First Amendment limits the circumstances under which liability may be imposed for such speech in a state-law defamation action. *See Sullivan*, 376 US at 279-80 (because of the First Amendment, speech about a public official and his or her public duties cannot give rise to defamation liability unless the speaker acted with "actual malice"); *Curtis Publishing Co. v. Butts*, 388 US 130, 164, 87 S Ct 1975, 18 L Ed 2d (1967) (Warren, C. J., concurring) (because of the First Amendment, speech about a public figure on a public issue cannot give rise to defamation liability unless the speaker acted with "actual malice")[1]; *Gertz v. Robert Welch, Inc.*, 418 US 323, 348-49, 94 S Ct 2997, 4 L Ed 2d 789 (1979) (because of the First Amendment, speech about a private party on a matter of public concern cannot give rise to defamation liability unless the speaker was at least negligent, and the plaintiff's recovery is limited to actual damages unless the speaker acted with "actual malice").

One such protection is that speech on a matter of public concern that does not imply an assertion of objective fact is fully protected by the First Amendment and thus nonactionable in defamation. *Milkovich*, 497 US at 20. That principle is sometimes loosely described as the First Amendment protecting "opinion speech," but the Court has expressly rejected the use of the term "opinion" to describe what is protected, because "a wholesale defamation exemption for anything that might be labeled 'opinion'" would "ignore the fact that expressions of 'opinion' may often imply an assertion of objective fact." *Id*. at 18.

---

[1] "Although Mr. Justice Harlan announced the result in [*Curtis Publishing*], a majority of the Court agreed with Mr. Chief Justice Warren's conclusion that the *New York Times* test should apply to criticism of 'public figures' as well as 'public officials.'" *Gertz v. Robert Welch, Inc.*, 418 US 323, 336, 94 S Ct 2997, 4 L Ed 2d 789 (1979).

In determining whether a statement is sufficiently factual to be actionable without offending the First Amendment, the dispositive question "is whether a reasonable factfinder could conclude that the statement implies an assertion of objective fact about the plaintiff." *Neumann*, 358 Or at 715; *see Milkovich*, 497 US at 21 ("The dispositive question in the present case then becomes whether a reasonable factfinder could conclude that the statements in the Diadiun column imply an assertion that petitioner Milkovich perjured himself in a judicial proceeding."). Oregon has adopted the Ninth Circuit's three-part test to answer that question, requiring consideration of "(1) whether the general tenor of the entire publication negates the impression that the defendant was asserting an objective fact; (2) whether the defendant used figurative or hyperbolic language that negates that impression; and (3) whether the statement in question is susceptible of being proved true or false." *Neumann*, 358 Or at 718-19. That test derives directly from *Milkovich*, in which the Court concluded that the writer's suggestion that the petitioner (a wrestling coach) had committed perjury in a hearing was "sufficiently factual to be susceptible of being proved true or false," and "the impression that the writer was seriously maintaining that petitioner committed the crime of perjury" was not "negated" by his use of "loose, figurative, or hyperbolic language" or the "general tenor of the article." 497 US at 21.

B.  *The Absence of the Actual Review from the Record*

We turn to the particulars of this case. As previously mentioned, none of the parties retained a copy of Wright's review, and plaintiff's efforts to obtain a copy from Google were unsuccessful. The trial court viewed that fact as fatal to plaintiff's defamation claim, at least as to the Steinway and Yamaha statements. We agree with plaintiff that the trial court erred in taking that view. Although not having a copy of the actual review complicates matters and may make it more difficult for plaintiff to prove his case, it is not dispositive and did not entitle defendants to judgment as a matter of law.

Defamation may be in the form of libel (defamation by printed or written words) or slander (defamation by

spoken words). *Neumann*, 358 Or at 712. Slander claims have long been litigated without the benefit of exact recordings, even if, with technological changes, recordings of the spoken word are now more common. *See, e.g.*, *Pollard v. Lyon*, 91 US 225, 23 L Ed 308 (1875) (slander claim); *Swift & Co. v. Gray*, 101 F2d 976, 981-82 (9th Cir 1939) (a slander plaintiff need not prove that the defendant spoke precisely the words alleged in the complaint but only that the defendant spoke words that were "in substance the same, or have substantially the same meaning," *i.e.*, "so many of the words alleged in the declaration as constitute the sting of the charge" or "as contain the poison to the character and constitute the precise charge of slander averred" (internal alterations and quotation marks omitted)). As for libel, by definition, libelous statements have been put in writing, and, as such, parties in a libel action usually can provide the court with an exact reproduction of the offending publication. *See, e.g.*, *Sullivan*, 376 US at 256-57; *Neumann*, 358 Or at 719. But it does not follow that such definitive evidence of the defendant's exact words is a prerequisite to a libel claim.[2]

Unlike the trial court, we do not view the absence from evidence of an actual copy of Wright's review as entitling defendants to summary judgment. Having a copy of Wright's review would certainly narrow the issues for trial, in that it would resolve any dispute about what he said. However, factfinders have long had the job of assessing competing evidence, making credibility determinations, and deciding what happened when what happened is in dispute. Here, four people—plaintiff, plaintiff's employee Norling, Wright, and Werner—read the Google review and testified as to what it said. For summary judgment purposes, the trial court should have viewed that evidence in the light most favorable to plaintiff, leaving it to a factfinder to make credibility determinations to the extent that there are material variations in what people remember about the review. ORCP 47 C.

---

[2] It should be noted that defendants' argument in the trial court and on appeal has been that the exact words of the review are essential to determining whether Wright's statements were defamatory and whether they are protected by the First Amendment. Defendants have not made any arguments under the Oregon Evidence Code, and we express no opinion on any potential Oregon Evidence Code issues.

As for the trial court's concern that it needed to see the entire review to assess whether Wright's allegedly defamatory statements are protected by the First Amendment, it is certainly true that the general tenor of a piece and the type of language used are important factors in assessing whether a statement implies an assertion of objective fact. *Neumann*, 358 Or at 718-19. However, nothing in *Neumann* or the caselaw from which it derives suggests that the existence of a dispute over the defendant's exact words precludes the plaintiff from prevailing on a defamation claim. Again, both parties were free to proffer evidence regarding all relevant aspects of the review.

That leaves the trial court's suggestion that plaintiff was attempting to create a factual dispute by changing his testimony over time, specifically with respect to the Steinway statement. It is unclear what the trial court meant. It appears that plaintiff and Norling consistently testified or attested that the review said that plaintiff's salesman told Wright that plaintiff could "sell new Steinways" when plaintiff could not sell new Steinways. It was Wright and Werner who injected the possibility that the review said that plaintiff's salesman told Wright that plaintiff was a Steinway dealer when plaintiff was not a Steinway dealer.[3] To the extent that the seller/dealer distinction is relevant to whether the statement is defamatory (as the trial court suggested)—even though, in either version, Wright asserted in his review that the salesman's statement to him was false—that is a fact dispute to be resolved by the factfinder, but it does not affect the First Amendment analysis.

C.  *Whether Wright's Speech Is Protected by the First Amendment*

Having concluded that plaintiff's failure to produce an actual copy of Wright's review is not dispositive, we next consider whether defendants were nonetheless entitled to summary judgment because Wright's statements are fully protected by the First Amendment as speech on a matter of

---

[3] At one point, plaintiff sought to amend his complaint to reflect Wright's and Werner's testimony, but the trial court denied the amendment. Plaintiff also once referred to the "Steinway dealer" issue in a reply brief unrelated to defendants' summary judgment motion. Neither is relevant to whether defendants were entitled to summary judgment.

public concern that does not imply an assertion of objective fact about plaintiff.[4]

In the trial court, defendants asserted that Wright was speaking on a matter of public concern and that his statements were not "factual" for First Amendment purposes, while plaintiff contended that Wright was *not* speaking on a matter of public concern or that, if he was, his statements *were* factual in nature. In ruling on summary judgment, the trial court implicitly concluded (or assumed without deciding) that Wright was speaking on a matter of public concern. As for whether Wright's review implied assertions of objective fact, the trial court expressly concluded that the "this guy can't be trusted" statement was nonactionable, while it appears to have concluded that the Yamaha and Steinway statements could be sufficiently factual to be actionable but for the absence of the actual review from the record.

1. *Whether Wright was speaking on a matter of public concern*

"The inquiry into the protected status of speech is one of law, not fact." *Connick v. Myers*, 461 US 138, 148 n 7, 103 S Ct 1684, 75 L Ed 2d 708 (1983). We first address whether Wright was speaking on a "matter of public concern" within the meaning of the First Amendment case law.

Constitutional protection for speech on matters of public concern is grounded in the important role of free speech in public affairs. The United States Supreme Court "has recognized that expression on public issues 'has always rested on the highest rung of the hierarchy of First Amendment values.'" *NAACP v. Claiborne Hardware Co.*, 458 US 886, 913, 102 S Ct 3409, 73 L Ed 2d 1215 (1982) (quoting *Carey v. Brown*, 447 US 455, 467, 100 S Ct 2286, 65 L Ed 2d 263 (1980)). "[S]peech concerning public affairs is more than self-expression; it is the essence of self-government." *Garrison v. Louisiana*, 379 US 64, 74-75, 85 S Ct 209, 13 L Ed 2d 125 (1964). There is a "profound national commitment to the principle that debate on public issues should

---

[4] In discussing defendants, we do not distinguish between Wright and Artistic Piano, as neither of them makes any argument independent of the other.

be uninhibited, robust, and wide-open." *Sullivan*, 376 US at 270.

To promote public discourse, the First Amendment protects even false speech on matters of public concern, up to a point. It does so not to protect the false speech itself but, rather, to encourage truthful speech on public issues, unhampered by the fear of liability for making innocent factual errors along the way:

> "Spreading false information in and of itself carries no First Amendment credentials. '[T]here is no constitutional value in false statements of fact.' [*Gertz*, 418 US at 340.]

> "Realistically, however, some error is inevitable; and the difficulties of separating fact from fiction convinced the Court in *New York Times*, *Butts*, *Gertz*, and similar cases to limit liability to instances where some degree of culpability is present in order to eliminate the risk of undue self-censorship and the suppression of truthful material."

*Herbert v. Lando*, 441 US 153, 171-72, 99 S Ct 1635, 60 L Ed 2d 115 (1979). As the Court described it in *Sullivan*, "erroneous statement is inevitable in free debate, and * * * it must be protected if the freedoms of expression are to have the breathing space that they need to survive." 376 US at 271-72 (internal quotation marks omitted).

For First Amendment purposes, speech need not concern the most pressing political or social issues of the day for it to be on a matter of public concern. *Mine Workers v. Illinois Bar Assn.*, 389 US 217, 223, 88 S Ct 353, 19 L Ed 2d 426 (1967) ("The First Amendment does not protect speech and assembly only to the extent it can be characterized as political. 'Great secular causes, with small ones, are guarded.'" (Quoting *Thomas v. Collins*, 323 US 516, 531, 65 S Ct 315, 89 L Ed 430 (1945).)). Both the individual consumer and society in general have strong interests in the free flow of commercial information. *Va. Pharmacy Bd. v. Va. Consumer Council*, 425 US 748, 763, 96 S Ct 1817, 48 L Ed 2d 346 (1976) (further stating that an individual consumer's interest in the free flow of commercial information "may be as keen, if not keener by far, than his interest in the day's most urgent political debate"). Relatedly, consumer speech regarding goods, services, and the businesses that provide

them to the public has typically been recognized as speech on a matter of public concern.[5] *See, e.g.*, *Neumann*, 358 Or at 720 (consumer review of a wedding venue was speech on a matter of public concern); *Unelko Corp. v. Rooney*, 912 F2d 1049, 1056 (9th Cir 1990) (Andy Rooney's statement on *60 Minutes* that a windshield-wiper product called Rain-X "didn't work" was speech on a matter of public concern).

In this case, Wright's review of plaintiff's piano business appears, at first blush, to be very similar to the review in *Neumann*, as far as the "public concern" issue. Wright posted his review on a publicly accessible website (Google), and the review's content related to matters of general interest to the public, particularly those members of the public in the market for a piano. In *Neumann*, the defendant posted a review of a wedding venue "on a publicly accessible website" (Google Reviews), and the review's content "related to matters of general interest to the public, particularly those members of the public who are in the market for a wedding venue." *Neumann*, 358 Or at 720. The Oregon Supreme Court "readily conclude[d]" that the defendant in *Neumann* had been speaking on a matter of public concern. *Id.*

There is a difference between this situation and *Neumann*, however, which is that it was undisputed in *Neumann* that the defendant was an actual wedding guest at a wedding that took place at the plaintiff's venue, whereas plaintiff in this case contends that Wright was not a bona fide potential customer but instead was acting to further the private economic interests of himself and his employer. In plaintiff's view, a real consumer writing a review of his business would be speaking on a matter of public concern, but the employee of a competitor posting a "fake consumer review" was not. Defendants respond that the speaker's

---

[5] Although *Virginia Pharmacy Board* itself involved "commercial speech," we do not mean to suggest that speech by consumers about businesses from which they obtain goods and services constitutes "commercial speech" in the First Amendment sense. *See Central Hudson Gas & Elec. v. Public Serv. Comm'n*, 447 US 557, 562-63, 100 S Ct 2343, 65 L Ed 2d 341 (1980) (the federal constitution "accords a lesser protection to commercial speech than to other constitutionally guaranteed expression"). "Commercial speech" is "usually defined as speech that does no more than propose a commercial transaction." *United States v. United Foods, Inc.*, 533 US 405, 409, 121 S Ct 2334, 150 L Ed 2d 438 (2001).

motivation is irrelevant to whether speech is on a matter of public concern for First Amendment purposes.

Contrary to defendants' argument, a speaker's motive or purpose in speaking *is* relevant to whether speech is protected by the First Amendment. The issue appears to arise most frequently in the context of public employment. When a public employee is terminated based on speech and files a civil rights action, the court must determine whether the speech is protected by the First Amendment. *Connick*, 461 US at 140. "[A] public employee does not relinquish First Amendment rights to comment on matters of public interest by virtue of government employment." *Id*. However, "when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Id.* at 147.

In the public-employee context, "[w]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Id.* at 147-48. Content refers to the topic of the speech; form refers to the manner in which it was communicated; and context refers to the context in which it occurred, including the speaker's motive for speaking. *See, e.g.*, *Breuer v. Hart*, 909 F2d 1035, 1038 (7th Cir 1990) (demonstrating how to conduct a "content, form, and context" analysis); *Linhart v. Glatfelter*, 771 F2d 1004, 1010 (7th Cir 1985) ("The test requires us to look at the point of the speech in question: [W]as it the employee's point to bring wrongdoing to light? Or to raise other issues of public concern, because they are of public concern? Or was the point to further some purely private interest? In *Connick* itself there was no doubt that the issues raised by the employee, issues of morale and discipline, were of public concern; the court looked beyond that fact to the employee's motive in raising them[.]").

In *Dun & Bradstreet*, the Court used the same public-concern test from *Connick*—requiring consideration of "content, form, and context"—to determine whether a defamation defendant had been speaking on a matter of public

concern and was thus subject to First Amendment protections. *See Dun & Bradstreet, Inc. v. Greenmoss Builders*, 472 US 749, 761-62, 105 S Ct 2939, 86 L Ed 2d 593 (1985). In *Dun & Bradstreet*, the Court evaluated the content, form, and context of allegedly defamatory statements—specifically a credit agency's statements to five subscribers regarding the plaintiff's creditworthiness—and concluded that the speech was not on a matter of public concern. *Id*. at 762. Referring back to the touchstone principle of *Sullivan*, the Court concluded by stating that there was "simply no credible argument" that the type of credit reporting at issue required special protection to ensure that "'debate on public issues [will] be uninhibited, robust, and wide-open.'" *Id*. (quoting *Sullivan*, 376 US at 270).

Here in Oregon, in both the public-employee and defamation contexts, we have recognized that the speaker's motivation or purpose in speaking is relevant to whether speech is protected by the First Amendment.

In the public-employee context, we have discussed *Connick* and stated that, in determining whether an employee's speech is protected, "[w]e consider plaintiff's motives in making the statements, as well as the subject matter of the statements." *Robson v. Klamath County Board of Health*, 105 Or App 213, 218, 804 P2d 1187, *adh'd to as modified on recons*, 109 Or App 242 (1991), *rev den*, 314 Or 176 (1992).

In the defamation context, the Oregon Supreme Court has held that a fake customer complaint written by a competitor to a mutual distributor was not speech on a matter of public concern. *Harley-Davidson v. Markley*, 279 Or 361, 363, 366, 568 P2d 1359, 1361 (1977). Although the court gave little explanation of its specific reasoning, it, like the Court in *Dun & Bradstreet*, ultimately harkened back to the touchstone principle of *Sullivan*, stating that "the interest in democratic dialogue [was] non-existent" in such circumstances and that "[t]he defamatory matter [did] not contribute to the free exchange of ideas in decision making for a self-governing society." *Id*. at 369.

Another relevant precedent is our decision in *Cooper v. PGE*, 110 Or App 581, 824 P2d 1152, *rev den*, 313 Or 299

(1992). In *Cooper*, the plaintiff was a contractor who had been doing work at the Trojan nuclear power plant (owned by the defendant), until the defendant obtained information that the plaintiff was using and dealing cocaine, at which point it withdrew his security clearance. *Id*. at 583-84. The defendant eventually told the plaintiff's employer why it had withdrawn his security clearance, after which the plaintiff brought a defamation claim against the defendant. *Id*. at 585. We concluded that the defendant had not been speaking on a matter of public concern "in the sense that the term has been used by the United States Supreme Court and the Oregon Supreme Court." *Id*. at 588. We recognized that "the security of the Trojan nuclear facility is certainly a matter that concerns the public *welfare and safety*." *Id*. (emphasis in original). However, the statements were "not published in a way that made them available to the general public" or "a subject for public discussion or comment." *Id*. And, in context, the speech "involved a question of personnel management, not a publicly debatable question concerning security policies at Trojan." *Id*. Ultimately, we concluded that the defendant had not been speaking on a matter of public concern and that, consequently, the normal state law of defamation applied, without any First Amendment protection. *See id*.

Under existing precedent of this court, the Oregon Supreme Court, and the United States Supreme Court, a speaker's motivation or purpose in speaking is a relevant consideration in determining whether he or she was speaking on a matter of public concern for First Amendment purposes. We reject defendants' argument to the contrary.[6]

---

[6] In arguing that the speaker's purpose is irrelevant to First Amendment protection, defendants rely heavily on *Obsidian Fin. Grp., LLC v. Cox*, 740 F3d 1284, 1287, 1291-92 (9th Cir 2014), in which the defendant had posted defamatory comments about the plaintiffs online, and, even though the defendant "apparently ha[d] a history of making similar allegations and seeking payoffs in exchange for retraction," the court concluded that she was speaking on a matter of public concern. The Ninth Circuit has expressly recognized that, in deciding whether allegedly defamatory speech is on a matter of public concern, it is necessary to evaluate content, form, and context. *Unelko*, 912 F2d at 1056. We do not understand *Obsidian* to exclude motivation as a relevant consideration. As for the particular conclusion on public concern that the court reached on the summary judgment record in that case, we express no opinion on that issue.

We now turn to the summary judgment record in this case to determine whether the trial court correctly concluded that Wright was necessarily speaking on a matter of public concern, triggering First Amendment protection. We begin with the content of Wright's statements. Although it may not be a matter of overwhelming public interest, the business practices of plaintiff's piano store, particularly the honesty of plaintiff's salespeople, is a matter of public interest. The next factor is form. The form of Wright's statements was a consumer review published on a publicly accessible website. Defaming someone to a larger audience does not in and of itself trigger First Amendment protection, but the fact that Wright's statements were placed in a public forum is relevant to the analysis. The final consideration is context. The only evidence is that Wright and his wife went to plaintiff's store on a day that Wright was off work, because, while working at Artistic Piano, Wright had heard from customers about negative experiences at plaintiff's store and wanted to check it out himself. According to Wright, he did not tell Werner that he was going to plaintiff's store, although he told Werner about the experience later the same day. According to Wright, he usually posts reviews of any business that he does business with, and he posted a review of plaintiff's store, without telling Werner beforehand, to relay his experience and in the hopes that it might spur plaintiff to make some improvements.

On that record, the trial court was correct in treating Wright's statements as speech on a matter of public concern. Absent some additional evidence beyond the mere fact that Wright worked for a competitor's piano store, it would be entirely speculative for a factfinder to find that Wright was speaking solely to further private interests, such as his and his employer's economic interests, as opposed to being at least partially motivated by public concern. Content, form, and context will come together in different ways in different cases, but, at least with respect to a consumer review of a publicly available good or service published in a public forum, the speaker's motivation would have to be to further purely private interests to take it outside the First Amendment. No

such finding could be made, except by speculation, on this record.[7]

2. *Whether Wright's review implied objective facts about plaintiff*

Having concluded that defendants established for purposes of their summary judgment motion that Wright was speaking on a matter of public concern, we next address whether Wright's review implies assertions of objective fact about plaintiff. The First Amendment precludes liability for statements that a reasonable factfinder could not find to imply an assertion of objective fact about the plaintiff. *Milkovich*, 497 US at 20; *Neumann*, 358 Or at 715. As previously noted, the trial court expressly concluded that the statement "this guy can't be trusted" is not sufficiently factual to be actionable, while it suggested that the Steinway and Yamaha statements could be sufficiently factual to be actionable but for the absence of the actual review from the record.

Viewing the record in the light most favorable to plaintiff as the nonmoving party, we conclude that the Steinway and Yamaha statements are sufficiently "factual" to be actionable but that the "this guy can't be trusted" statement is not.

There is evidence that Wright said in his review that plaintiff's salesman told him that plaintiff could sell new Steinway pianos, even though, according to Wright, plaintiff "cannot" sell new Steinway pianos. Whether the salesman made that statement and whether plaintiff could sell

---

[7] It is rare for a defamation defendant's motive for speaking to even be at issue. Historically, most defamation cases implicating the First Amendment have involved media defendants. In more recent cases involving consumer reviews, the defendants are usually actual consumers with no apparent ulterior motives. Logic suggests that a case could arise in which the defendant's motive for speaking is seriously disputed and would be determinative of First Amendment protection in an otherwise close case—and logic suggests that a factfinder would need to resolve that dispute—so we assume as much for purposes of our discussion. However, to be clear, the United States Supreme Court has treated it as an open question whether factfinding has a role in determining whether a defendant was speaking on a matter of public concern. *See Rankin v. McPherson*, 483 US 378, 385 n 8, 107 S Ct 2891, 97 L Ed 2d 315 (1987) ("Even assuming that the District Court can be viewed to have made any findings of fact on the public concern issue, it is unclear to what extent that issue presents a question of fact at all.").

new Steinway pianos are both susceptible of being proved true or false. The same is true of Wright's claim that plaintiff's salesman told him that a particular Yamaha C-7 piano was about five years old when it was actually 20 years old. Whether the salesman made that statement and the actual age of the piano are both susceptible of being proved true or false.

Neither the language nor general tenor of the review negate the impression that Wright was "seriously maintaining" that the salesman lied to him about plaintiff's ability to sell Steinways and lied to him about the age of the Yamaha C-7 piano. *Milkovich*, 497 US at 21 (considering whether the writer's use of "loose, figurative, or hyperbolic language" or the "general tenor of the article" negated the impression that the writer "was seriously maintaining that petitioner committed the crime of perjury"); *see also Neumann*, 358 Or at 718-19 (requiring consideration of whether the general tenor of the publication or the use of figurative or hyperbolic language "negates the impression" that the defendant was asserting an objective fact). There is evidence of some figurative language in the review, specifically Wright's comment that the store "smelled like grandma's attic" and his statement that plaintiff claiming to sell new Steinway pianos but not having any in the store was "like a Chevy dealer not having any Chevrolets on the lot." However, overall, the use of such language does not negate the impression that Wright was serious about the salesman's alleged misrepresentations. Nor does anything about the general tenor of the review negate that impression.

Thus, the Steinway and Yamaha statements are sufficiently factual to be actionable. The same cannot be said of "this guy can't be trusted." In isolation, such a statement is unquestionably subjective and not susceptible of being proved true or false. The only question is whether its nature changes when viewed in the larger context of the Steinway and Yamaha statements. In context, the statement may be fairly understood to mean that plaintiff "can't be trusted" *because* his salesman misrepresented to Wright that plaintiff can sell new Steinway pianos and *because* his salesman misrepresented to Wright that the Yamaha C-7 on the floor was only five years old.

When a person discloses the facts from which he has drawn a negative conclusion about the plaintiff—and the facts themselves are true—the conclusion typically falls within the protection of the First Amendment, even if it relies on faulty reasoning. *See Partington v. Bugliosi*, 56 F3d 1147, 1156 (9th Cir 1995) ("The courts of appeals that have considered defamation claims after *Milkovich* have consistently held that when a speaker outlines the factual basis for his conclusion, his statement is protected by the First Amendment."). In such circumstances, the conclusion implies no *facts* beyond those already stated and simply reflects the speaker's own personal conclusion from those facts. The situation is slightly different when the disclosed facts are allegedly false, but, ultimately, the same reasoning applies. Wright's statement that "this guy can't be trusted" is his own conclusion from the disclosed facts. The underlying "fact" statements are actionable, but Wright's conclusion is not.

In concluding that two of Wright's three challenged statements are sufficiently factual to be actionable without offending the First Amendment, it is helpful to contrast Wright's review with the review in *Neumann*. Wright's review was generally objective and factual in tenor, albeit containing a couple figurative statements for color, and there is no evidence of hyperbole. The thrust of the review was that potential customers should be wary of plaintiff's business because his salesman made two specific false statements to Wright, one about plaintiff's ability to sell new Steinway pianos and one about the age of a specific Yamaha C-7 piano on the floor.

By contrast, the review in *Neumann* was packed with subjective statements that were not susceptible of being proved true or false, such as calling the wedding a "Disaster!!!!!"; describing it as "[t]he worst wedding experience of [the reviewer's] life!"; saying that the venue was not a "great place" to get married like other places; and describing the owner as "two faced," "crooked," and "rude" and stating that, "in my opinion she will find a why [*sic*] to keep your $500 deposit, and will try to make you pay even more." *Neumann*, 358 Or at 708-09. To the extent that one or two statements in the *Neumann* review, in isolation,

might have been susceptible of being proved true or false, the general tenor of the review and the defendant's use of hyperbolic language were such as to negate the impression of serious accusations of fact. *See, e.g.*, *id*. at 722 ("[I]n light of the hyperbolic tenor of the review, the use of the word 'crooked' does not suggest that Liles was seriously maintaining that Neumann had, in fact, committed a crime."). As one court put it well, "the test of libel is not quantitative," and "a single sentence may be the basis for an action in libel even though buried in a much longer text,"[8] but, [w]hile a drop of poison may be lethal, weaker poisons are sometimes diluted to the point of impotency." *Washburn v. Wright*, 261 Cal App 2d 789, 795, 68 Cal Rptr 224 (1968).

Unlike the review in *Neumann*, a reasonable factfinder could find that Wright's review implies an assertion of objective fact about plaintiff's business, specifically that plaintiff's salesman made two specific misrepresentations to Wright, regarding the types of new pianos that it could sell and the age of a particular used piano that it had for sale, which is incompatible with the proper conduct of a business.

3.   *Whether plaintiff can prove actual malice*

Having concluded that defendants established for purposes of their summary judgment motion that Wright was speaking on a matter of public concern, and having concluded that a reasonable factfinder could find that Wright's review implied two assertions of objective fact, the last question before us is whether defendants were entitled to summary judgment because plaintiff cannot prove that Wright acted with "actual malice." Under *Gertz*, when the plaintiff in a defamation action is a private party (not a public official or public figure), the First Amendment limits the plaintiff's recovery of presumed or punitive damages to situations in which the plaintiff proves that the defendant acted with "actual malice." 418 US at 349. For First Amendment purposes, "actual malice" means that the defendant knew that the statements were false or acted with reckless disregard

---

[8] *See, e.g.*, *Milkovich*, 497 US at 4-7 (libel action based on the headline and nine sentences included in a newspaper column); *Sullivan*, 376 US at 257 (libel action based on statements contained in 2 paragraphs of a 10-paragraph newspaper editorial).

of whether they were false. *Sullivan*, 376 US at 279-80. Thus, "'[a]ctual malice,' as used by the Supreme Court of the United States, is not malice at all." *Harley-Davidson*, 279 Or at 363 n 1 (further describing "actual malice" as an "unfortunate" and confusing term, "because it does not mean hate, ill will or intention to harm").

Defendants argue that, in this case, they were entitled to summary judgment, because plaintiff is seeking presumed damages[9] and cannot prove that Wright acted with actual malice when he wrote his review. Defendants' actual-malice argument is premised on *Gertz* applying to all defamation claims brought by private-party plaintiffs. However, that premise is inconsistent with current Oregon Supreme Court case law, which is binding on this court. The Oregon Supreme Court has expressly held that the First Amendment limitations in *Gertz* apply only in defamation actions brought by private parties against *media* defendants. *Harley-Davidson*, 279 Or at 372 (holding that *Gertz*'s limitation on recovery of punitive damages in a defamation action applies only to media defendants); *see also Bank of Oregon v. Independent News*, 298 Or 434, 445, 693 P2d 35 (1985) (applying *Gertz* to a "media defendant"); *Wheeler*, 286 Or at 110 ("Although we acknowledge that there is authority to the contrary, we conclude that we were correct when we held in *Harley-Davidson* *** that the rules first announced in *Gertz*, applicable to cases in which the plaintiff is neither a public official nor a public figure, apply only to actions against media defendants."); *Cooper*, 110 Or App at 587 ("[T]he Oregon Supreme Court has interpreted *Gertz* to apply only in the context of media defendants.").

The Ninth Circuit and a number of other courts have rejected a distinction between media and nonmedia defendants for First Amendment purposes. *See Obsidian Fin. Grp., LLC v. Cox*, 740 F3d 1284, 1291 (9th Cir 2014) (holding that "the First Amendment defamation rules in *Sullivan* and its progeny apply equally to the institutional press and individual speakers"). However, the United States

---

[9] It is unclear whether plaintiff is seeking *only* presumed damages or a combination of presumed and actual damages. Due to the lack of adequate briefing on that issue, we express no opinion on it.

Supreme Court has historically made a point of referring to the defendants in its defamation cases as "media defendants," and it has avoided ever addressing whether that caselaw applies equally to nonmedia defendants.[10] In the absence of controlling United States Supreme Court authority, we are bound by the Oregon Supreme Court, not the Ninth Circuit.[11] *J. M. v. Oregon Youth Authority*, 288 Or App 642, 646, 406 P3d 1127 (2017), *aff'd*, 364 Or 232, 434 P3d 402 (2019). It follows that defendants cannot be entitled to summary judgment based on any lack of evidence of actual malice, because, under current Oregon law, the actual-malice limitation does not apply in this case involving nonmedia defendants.

In any event, even if the actual-malice requirement did apply and limit plaintiff's ability to recover presumed damages, the evidence in the summary judgment record would be sufficient to allow a finding of "actual malice." Plaintiff's entire theory is that neither he nor any of his salesman made the Steinway or Yamaha statements that Wright attributed to an unidentified salesman in his review. Plaintiff and all of his salesman put in declarations relevant to that point. Based on that evidence, viewed in the light most favorable to plaintiff, a reasonable factfinder could find that Wright fabricated the statements and that no one actually said anything to him about plaintiff's ability to sell new Steinways or the age of the Yamaha C-7. If

---

[10] *See, e.g.*, *Milkovich*, 497 US at 19-20 ("[*Philadelphia Newspapers, Inc. v. Hepps*, 475 US 767, 777, 106 S Ct 1558, 89 L Ed 2d 783 (1986)] stands for the proposition that a statement on matters of public concern must be provable as false before there can be liability under state defamation law, at least in situations, like the present, where a media defendant is involved."); *Gertz*, 418 US at 339-42, 345, 350 (repeatedly describing the First Amendment principles in *Sullivan* and its progeny as serving to avoid "media self-censorship," and stating, in crafting specific First Amendment protections for private parties' speech on matters of public concern, that "the communications media are entitled to act on the assumption that public officials and public figures have voluntarily exposed themselves to increased risk of injury from defamatory falsehood concerning them," whereas "[n]o such assumption is justified with respect to a private individual").

[11] Defendants suggest that the Court abolished the media/nonmedia distinction in *Citizens United v. Federal Election Comm'n*, 558 US 310, 352, 130 S Ct 876, 175 L Ed 2d 753 (2010), specifically pointing to the Ninth Circuit's citation to *Citizens United* in *Obsidian*. We disagree that *Citizens United* is dispositive on the present issue. Indeed, the Ninth Circuit itself did not treat *Citizens United* as dispositive, only as indirectly supportive. *See Obsidian*, 740 F3d at 1290-91.

Wright fabricated statements and then attributed them to a salesman, he necessarily would have known that what he said was false. That would prove actual malice.

### III.   CONCLUSION

The trial court erred in granting summary judgment to defendants on plaintiff's defamation claim. The absence of a copy of the actual review from the record did not entitle defendants to summary judgment. As for Wright's statements being protected by the First Amendment, defendants established for purposes of their summary judgment motion that Wright was speaking on a matter of public concern, but a reasonable factfinder could find that Wright's review implies two assertions of objective fact about plaintiff. As such, the First Amendment does not preclude liability on those statements, and defendants were not entitled to summary judgment.

Reversed and remanded.